## State of Vermont v. Richard Cartee

[632 A.2d 1108]

No. 92-603

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed October 8, 1993

*Jane Woodruff*, Orleans County State's Attorney, Newport, for Plaintiff-Appellee.

*Norman R. Blais*, Burlington, for Defendant-Appellant.

**Morse, J.** Defendant Richard Cartee was tried by a jury and convicted of two counts of sexual assault of a person under the age of sixteen pursuant to 13 V.S.A. § 3252(a)(3) (statutory rape). He appeals, claiming that the trial court abused its discretion and violated his Sixth Amendment right to confrontation in two ways: First, by excluding evidence that complainant may have fabricated the charges to protect his stepfather, who had been implicated by defendant in committing an insurance fraud, and, second, by excluding impeachment evidence of complainant's prior juvenile adjudication for sexual assault. Defendant also claims that the trial court erred by admitting into evidence inconsistent hearsay statements to impeach an absent defense witness whose deposition was read to the jury. Defendant further claims plain error due to the exclusion of females

under age sixteen from the courtroom during the complainant's testimony. Finally, defendant asserts that, in fashioning the sentence, the court violated his Fifth Amendment right against self-incrimination. We decide only the first issue and reverse and remand for a new trial.

In May 1991, complainant, a sixteen-year-old boy, accused defendant, a bookkeeper employed by the boy's mother, of committing two separate acts of oral sex on him during the summer of 1990. The accusations surfaced when complainant was in residential treatment for drug and alcohol-related problems. He disclosed the alleged assault to his drug treatment counselor after a group-therapy session where other residents related experiences of sexual abuse. The Vermont Department of Social and Rehabilitation Services (SRS) was promptly informed. A few days later, on May 26, 1991, the boy told his mother about the incidents. During a police interview on June 1, 1991, defendant was made aware of the charges against him and denied the allegations.

About one month after the sexual assault charges were filed, defendant went to the police and gave incriminating information to both state and federal law enforcement officials concerning the alleged involvement of complainant's stepfather in fraudulent insurance practices. The stepfather's insurance business had been the subject of an ongoing investigation since the summer of 1990. That summer, complainant's stepfather was notified by the United States Attorney's Office in New Hampshire that the FBI was investigating him in connection with suspected insurance fraud. The stepfather received notification about the same time complainant alleges the sexual assault occurred.

Prior to the investigation, defendant was employed for a time as a bookkeeper for the boy's stepfather. At the police interview and before the judge at trial, defendant stridently argued that the sexual assault charges levied against him were fabricated by complainant in an effort to stop defendant from providing information to the authorities investigating complainant's stepfather.

Before trial, the State moved to exclude any evidence that referred to the investigation of the stepfather. Defendant made an offer of proof that (1) the investigation of the stepfather for

fraud was underway before any allegations of sexual assault; (2) soon after the investigation started, the stepfather threatened defendant in an attempt to get him to remain silent about his knowledge of the business; (3) complainant's mother met with defendant's brother and proposed an arrangement whereby the sexual assault charges would be dropped in return for defendant's signed agreement not to testify further against the stepfather; and (4) thereafter, complainant and his mother met with the state's attorney in an effort to have the sexual assault charges dropped. Defendant argued that this evidence tended to show complainant fabricated sexual assault charges to dissuade defendant from implicating the stepfather in the federal investigation.

The court ruled that the evidence contained in the offer was inadmissible because it amounted to no more than "mere speculation" that complainant knew of these offers, negotiations, and threats. The court also regarded the contended probative link as "defying logic" and stated that, even if there were some probative value, it was outweighed by the potential of confusing the issues, misleading the jury, and unfairly prejudicing the State's case. See V.R.E. 403 (relevant evidence may be excluded when substantially outweighed by countervailing factors). At trial, defendant renewed his request to explore complainant's motive for filing charges after complainant testified that he had gone to the state's attorney on the day of defendant's arraignment to drop the sexual assault charges because he "was going through a lot and . . . was sick of dealing with everything." Defendant argued that the prosecutor had opened the door to questioning about motive. Standing on its earlier ruling, the court refused to allow the line of questioning.

Our analysis begins with V.R.E. 403, which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court has discretion to balance these factors. Discretionary rulings of the trial court will not be reversed by this Court absent a showing of an abuse of that discretion. *State v. McElreavy*, 157 Vt. 18, 23, 595 A.2d 1332, 1335 (1991). On appeal, the burden falls upon the defendant to show

that the court's discretion was either withheld or exercised on clearly unreasonable grounds. *State v. Dorn*, 145 Vt. 606, 616, 496 A.2d 451, 457 (1985). Finally, this Court will not disturb reasonable discretionary rulings of the trial court "even if another court might have reached a different conclusion." *State v. Foy*, 144 Vt. 109, 115, 475 A.2d 219, 223 (1984).

In cases of sexual assault or abuse where the complainant is the only witness, the presence of an ulterior motive for the victim's making the accusations is often a critical issue. Such was the case here. And though the evidence offered in this case to explain complainant's possible motive to falsely accuse defendant was of arguable probative value, it certainly was not a matter of "mere speculation."

Our analysis of whether the trial court abused its discretion by unreasonably disallowing the evidence of motive is further amplified by defendant's constitutional right to confront witnesses against him. In *Davis v. Alaska*, 415 U.S. 308 (1974), the United States Supreme Court recognized that the primary purpose of confrontation is to guarantee a means for the opponent to test the truth and accuracy of a witness' testimony: "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17. The Court concluded that the cross-examination permitted by the trial court was insufficient to develop the issue of bias, and having found a violation of defendant's Sixth Amendment right to confrontation, the Court stated:

> [W]e do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided "a crucial link in the proof . . . of petitioner's act."

*Id.* at 317 (quoting *Douglas v. Alabama*, 380 U.S. 415, 419 (1965)). Following *Davis*, this Court specifically acknowledged that a trial court's discretion "to restrict the impeachment of a key prosecution witness with evidence reflecting on his credibility is limited" by the protection afforded by the Confrontation Clause. *State v. Covell*, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985) (reversing trial court's exclusion of impeachment evi-

dence aimed at attacking witness's credibility based on both state and federal constitutions).

We recognize that the Sixth Amendment and Chapter I, Article 10 of the Vermont Constitution do not prevent a trial court from imposing reasonable limits on cross-examination into the partiality of a prosecution witness. Insofar as the Confrontation Clause is concerned, a court retains wide latitude "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); cf. *State v. Johnson*, 143 Vt. 355, 359, 465 A.2d 1366, 1368 (1983) (provisions of Chapter I, Article 10 do not guarantee admission of prejudicial or misleading evidence).

In this case, however, the trial court allowed no inquiry into the possibility that complainant, given the ongoing investigation of his stepfather, was motivated to fabricate in order to undermine or to prevent damning testimony by defendant, who was his stepfather's former bookkeeper. Complainant's uncorroborated testimony was the only evidence of the alleged abuse. Reasonable doubt about his believability would have necessarily resulted in an acquittal. Given that complainant's credibility was a pivotal issue bearing on defendant's guilt, the trial court should have been "particularly cautious in exercising its discretion to preclude impeachment evidence offered by a defendant" due to the state and federal constitutional issues implicated in such a decision. *State v. Covell*, 146 Vt. at 341, 503 A.2d at 544; see also *State v. DeJoinville*, 145 Vt. 603, 606, 496 A.2d 173, 175 (1985) (greater reasons for exploring probative evidence offered to shed light on credibility when case turns on which of two witnesses is to be believed).

By excluding the evidence about the investigation of complainant's stepfather, the jury was left without benefit of a reasonably complete understanding of complainant's account. In this context, cross-examination was largely an empty gesture. Considering the critical role complainant's testimony and credibility occupied in the trial, exclusion of the impeachment evidence regarding motive was prejudicial and cannot be considered harmless error. See *Delaware v. Van Arsdall*, 475 U.S. at 684 (Confrontation Clause issues subject to harmless error

analysis). We conclude that the trial court went too far in excluding this evidence and that a new trial is required.

Defendant also sought, unsuccessfully, to have admitted under V.R.E. 609 evidence of complainant's prior adjudication of delinquency for sexual assault in order to attack complainant's credibility. The sexual assault by the boy took place during the summer of 1990, sometime before he claimed he was sexually assaulted by defendant. We do not decide this issue, but remand for reassessment on retrial considering its potential relevance to complainant's motive in bringing the particular accusation against defendant.

Given our disposition, defendant's other claims on appeal need not be addressed.

*Reversed and remanded.*