# State of Vermont v. Roger Webster

[675 A.2d 1330]

No. 94-106

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 15, 1996

*Robert L. Sand*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams*, St. Johnsbury, and *Thomas P. Donnellan* of *Moore & Donnellan*, Derby, for Defendant-Appellant.

**Johnson, J.** Defendant appeals multiple assault convictions, arguing that the trial court erred by (1) excluding for substantive purposes certain evidence regarding an alleged affair between the complaining witness, defendant's wife, and the chief investigating officer, and (2) denying a motion for new trial based on newly discovered evidence, namely an answering machine tape purporting to show defendant's wife threatening the officer. We affirm.

## I.

Defendant was convicted of seven counts of simple assault. Five of the assaults were against his wife, one was against his older daughter, then eleven, and one was against his younger daughter, then eight.[1] Defendant's wife testified that she and her children had endured several years of physical and emotional abuse while living with

---

[1] Defendant faced thirteen counts of simple assault and one count of lewd and lascivious conduct. He was acquitted of four of the simple assault charges and the lewd and lascivious conduct charge; the jury was unable to reach a verdict on two simple assault charges, and the court declared a mistrial as to those charges.

defendant. The two children also testified, describing the abuse they suffered, and corroborating some of the abuse directed at their mother. The State also presented the testimony of several corroborating witnesses. One witness testified that she had observed bruising on defendant's wife. Another witness testified that he had counseled defendant's wife about the abuse. The corroborating witnesses also established that defendant's wife had revealed the abuse and sought relief as early as February 1990, more than two years before the local sheriff, who was the chief investigating officer, became involved in the case.

On appeal, defendant argues that his rights to confront witnesses and present a defense were violated because the trial court refused to permit defendant to pursue his theory of the case. Defendant sought to undermine the credibility of the complaining witness, defendant's wife, by presenting evidence regarding alleged romantic involvement between defendant's wife and the sheriff. Although the court permitted much of the relevant testimony for impeachment purposes, the court instructed the jury that they were not to determine whether the affair took place, but only to consider the evidence in deciding whether or not they believed defendant's wife and the other witnesses.

The trial court excluded the evidence under V.R.E. 403, which permits the exclusion of relevant evidence where the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The trial court has discretion to balance these factors, and we will not disturb the trial court's ruling absent a showing of an abuse of that discretion. *State v. Cartee*, 161 Vt. 73, 75, 632 A.2d 1108, 1110 (1993). In criminal cases, however, the broad discretion of the trial court in evidentiary matters is limited by defendant's constitutional right to confront witnesses against him and by the demands of due process. *Id.* at 76, 632 A.2d at 1110; *State v. Covell*, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985).

We note first that defendant has overstated the extent to which the trial court limited his presentation of his defense. Defense counsel was free to cross-examine the three complaining witnesses about possible motives to fabricate the charges. For example, defense counsel presented to the jury the possibility that defendant's wife had fabricated the charges either to gain advantage in her pending divorce action, or to divert attention from her own pending criminal charges. Defense counsel did succeed in impeaching defendant's wife

with respect to the alleged affair, by calling two witnesses to contradict her denial of the affair. The first, an acquaintance of defendant's wife, testified that defendant's wife had confided in her about the affair; the second, a deputy sheriff, testified that he went to the sheriff's camp one night, saw defendant's wife's vehicle parked there, heard voices inside, but received no response to his greeting until the sheriff emerged and came down the driveway just before the deputy left. As defense counsel stated more than once during the trial, the defense theory of the case was that "[defendant's wife] lacks credibility," and the trial court's limiting instruction was not inconsistent with that theory. Rather, the court's instruction was intended to remind the jury not to be distracted by the conflicting evidence regarding the affair.[2]

■ Regardless, the trial court acted within its discretion by limiting the evidence to impeachment purposes. Defendant presents a theory that defendant's wife conspired with the sheriff to concoct a story of abuse and coach defendant's daughters to support the story. Had defendant had evidence to support such a theory, that evidence certainly would have been admissible. All defendant offered, however, was evidence tending to show that defendant's wife and the sheriff had an affair. Defendant chose not to pursue the "coaching" theory during cross-examination of the children. The sheriff was not called as a witness by the State, and gave no testimony in support of the charges against defendant, so any possible bias of the sheriff was not relevant. As defense counsel repeatedly argued during the trial, the principal issue in this domestic abuse case was the credibility of the complaining witnesses. Evidence as to the sheriff's actions and

---

[2] Defendant also points to three items of testimonial evidence excluded by trial court. First, the acquaintance would have testified further that defendant's wife made statements to her regarding the sheriff's sexual performance. The acquaintance's testimony about the affair was properly admissible to impeach defendant's wife, but we agree with the trial court that the additional testimony was cumulative, unnecessary, and likely to distract the jury. Second, defendant sought to present testimony of a bank official that the sheriff had tried to subpoena defendant's bank records back to 1970. The state's attorney explained that the subpoena, which specifically requested name changes on the account, was an attempt to verify allegations that defendant had controlled the family finances and kept his wife's name off the family bank accounts. The trial court, within its discretion under V.R.E. 403, properly concluded that the probative value of the evidence, if any, was outweighed by its prejudicial impact. Finally, the trial court excluded a deputy sheriff's testimony about a conversation with the sheriff in which the sheriff admitted his involvement with defendant's wife. That testimony was hearsay not within any exception and was properly excluded under V.R.E. 802.

motives had no bearing on the credibility of defendant's wife and children. We agree with the trial court that evidence of the alleged affair had minimal probative value, but was very likely to confuse the issues at the trial and mislead the jury.

Defendant argues that this case is analogous to *Cartee*, in which this Court reversed the defendant's sexual assault convictions and remanded for a new trial because the trial court excluded evidence that the complaining witness may have fabricated the charges. In *Cartee*, however, the defendant presented a coherent theory explaining the claimed motive to fabricate, and made an offer of proof supporting that theory. Specifically, the defendant, a bookkeeper who had worked for the complainant's stepfather, claimed

> that (1) the investigation of the stepfather for fraud was underway before any allegations of sexual assault; (2) soon after the investigation started, the stepfather threatened defendant in an attempt to get him to remain silent about his knowledge of the business; (3) complainant's mother met with defendant's brother and proposed an arrangement whereby the sexual assault charges would be dropped in return for defendant's signed agreement not to testify further against the stepfather; and (4) thereafter, complainant and his mother met with the state's attorney in an effort to have the sexual assault charges dropped.

161 Vt. at 74-75, 632 A.2d at 1109-10.

This case may be distinguished from *Cartee* on several grounds. Here, the trial court was particularly concerned that the jury not be distracted by the conflicting evidence regarding the alleged affair, the fact of which was never conclusively established. The possibility for prejudice was thus greater than in *Cartee*, where the fact of the fraud investigation was undisputed. Also, we emphasized in *Cartee* that because the only evidence against the defendant was the victim's uncorroborated testimony, the victim's motivation was a "critical issue." *Id.* at 76, 632 A.2d at 1110. In this case the testimony of defendant's wife was corroborated by the two children and by the State's other witnesses.

Moreover, defendant's "theory of the case" is just that: a theory, for which he offered no supporting evidence. Unlike the evidence of harassment and dealmaking in *Cartee*, the mere fact of an affair between defendant's wife and the sheriff does not suggest that defendant's wife fabricated the charges against her husband. Al-

though in *Cartee* the proffered evidence centered on actions of the complainant's family members, those actions suggested a reason why the *complainant* might have fabricated the charges against the defendant. Here, after impeaching the credibility of defendant's wife, defendant in essence sought to impeach the sheriff as well, by creating a mini-trial on the issue of the affair. As the sheriff's credibility was not in issue, however, evidence tending to show his bias was not relevant.

## II.

Defendant's second claim of error is that the trial court improperly denied his motion for a new trial based on newly discovered evidence. The new evidence was an audio tape from a telephone answering machine that contained four statements made by defendant's wife. The statements, which were recorded on the sheriff's answering machine on a single day several months before defendant's trial, read as follows:

> This is a message to you, Jim, I'm not fooling around, you best be doing something.

> Just another message I can turn over those pictures. I just wanted to let you know I am not going to give up this time because you lied and got caught in your own lie, goodbye.

> Just want you to know that I know that you are still not home, that you lied to me. And I also want you to know that I don't appreciate lies and we need to talk and get this straightened out. I know that you spent the night in Island Pond, because I have checked it out, good night.

> Jim, I suggest you call me soon or there is going to be big trouble in Island Pond today. We need to really discuss this thoroughly, thank you.

The trial court evaluated this evidence in light of the standard for a new trial on grounds of newly discovered evidence. To prevail on a motion for a new trial on these grounds, defendant must meet five requirements:

> "(1) it must appear that the new evidence would probably change the result upon retrial; (2) the new evidence must have been discovered subsequent to trial; (3) the evidence could not have been discovered earlier by the exercise of due

diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching."

*State v. Miller*, 151 Vt. 337, 338, 560 A.2d 376, 377 (1989) (quoting *State v. Smith*, 145 Vt. 121, 131, 485 A.2d 124, 130-31 (1984)).

The trial court found that defendant had met the second, third, and fourth requirements, and noted that the tape "piqued curiosity" and possibly could be construed as an attempt by defendant's wife to threaten or blackmail the sheriff into continuing the investigation against defendant. Nonetheless, the court concluded that the new evidence was "merely impeaching" and that defendant had not shown that the evidence would change the outcome upon retrial.

█ █  The decision to grant or deny a new trial rests within the sound discretion of the trial court. We will overturn the trial court's decision only upon a showing that the court abused or withheld its discretion. *Id.* at 339, 560 A.2d at 377. Moreover, as we have previously recognized, meeting the first requirement is "particularly difficult . . . because it requires the probability of a different result, not simply a possibility of a different result." *Id.*

In light of the substantial evidence presented by the State in this case, we agree that a different result was not probable as a result of the new evidence. The tape-recorded statements may have provided additional ammunition for impeachment of defendant's wife, but defense counsel managed quite extensive impeachment of defendant's wife without the tape. Although the statements may support defendant's claim that defendant's wife was romantically involved with the sheriff, the statements do not undermine the credibility of the State's other witnesses, including the two children. Nor do the statements explain a principal flaw in the defense theory, namely that defendant's wife began complaining of abuse more than two years before the sheriff entered the investigation. Considering the overall strength of the case against defendant, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

*Affirmed.*