## State of Vermont v. Richard K. Hanks, Jr.

[772 A.2d 1087]

No. 99-490

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 2, 2001

*Robert Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant.

**Johnson, J.** Defendant appeals his jury conviction on a charge of driving while under the influence of intoxicating liquor (DWI), in violation of 23 V.S.A. § 1201(a)(2). He argues that the district court erred by limiting his cross-examination of the state chemist so that he was prevented from challenging the State's reliance on a permissive inference that his breath test result indicated he was intoxicated. We conclude that the trial court abused its discretion by refusing to allow defense counsel to cross-examine the state chemist concerning the potential variability among different persons at different times in the conversion rate between their breath-alcohol (BrAC) and blood-alcohol (BAC) concentration. Because we cannot be sure that the error was harmless, we reverse the conviction.

Defendant was stopped and arrested for DWI in the early morning hours of September 30, 1998. Approximately one hour and twenty minutes after the stop, defendant submitted a breath sample that indicated a concentration of .109 grams of alcohol per 210 liters of breath. Defendant was charged with driving "under the influence of intoxicating liquor," in violation of 23 V.S.A. § 1201(a)(2), rather than driving with an alcohol concentration of .08 or more, in violation of § 1201(a)(1). Nevertheless, the State indicated that it intended to introduce defendant's breath test result to take advantage of the permissive inference that defendant was intoxicated at the time of the alleged offense. See 23 V.S.A. § 1204(a)(2) ("If the person's alcohol concentration at [the time of operation] was 0.08 or more, it shall be a permissive inference that the person was under the influence of intoxicating liquor in violation of section 1201(a)(2) . . . ."); *id.* § 1204(a)(3) ("If the person's alcohol concentration at any time within two hours of the alleged offense was 0.10 or more, it shall be a permissive inference that the person was under the influence of intoxicating liquor in violation of section 1201(a)(2) . . . .").

A jury trial was scheduled for September 28, 1999. The day before trial, the State filed a motion in limine asking the court to limit defense counsel's cross-examination of the State's expert witness, a Department of Health chemist who was expected to explain the results of defendant's breath sample. The State asked the court "to exclude any examination based on variations as a general matter in the human population in the so-called 'partition ratio.'"

The "partition ratio" refers to the conversion rate between a person's BrAC and BAC. Alcohol in the breath does not cause

intoxication. Rather, it is the impact of alcohol on the central nervous system, particularly the brain, that causes the physiological and psychological changes associated with impairment. Alcohol reaches the central nervous system through the blood. When used to establish blood-alcohol levels, breath-testing devices such as the Datamaster machine use a mathematical constant to approximate the percentage of alcohol in the blood based on the amount of alcohol present in a breath sample. Like other breath-testing machines, Datamaster uses a conversion rate of 2100:1 as an assumed blood-breath ratio, which represents the relationship between the number of alcohol molecules in the bloodstream to the number present in the breath when both substances are tested simultaneously. Thus, a 2100:1 conversion factor assumes that for each molecule of alcohol in a given volume of breath, there are 2100 molecules of alcohol in the same volume of blood.

It is generally recognized, as confirmed by the proffered testimony of the state chemist in the instant case,[1] that "[b]ecause blood-breath ratios vary both between individuals, and at different times in the same individual, a breath test based on a 2100:1 blood-breath ratio may not accurately represent a particular individual's blood alcohol level." *State v. Brayman*, 751 P.2d 294, 297 (Wash. 1988). The state chemist agreed that partition ratios can vary from 1600:1 to 3000:1, and further acknowledged that other experts have recognized an even greater variance in a small percentage of the population. The chemist explained that if the actual partition ratio were lower than 2100:1 because of factors such as body temperature or the ratio between red blood cells and blood plasma, a breath test would tend to overestimate blood alcohol; the opposite would be true if the partition ratio were higher than 2100:1. The chemist conceded that, at its extremes, the variance could significantly affect test results. For example, in a related case,[2] the chemist testified that if the Datamaster reported a BrAC of .110 percent based on the standard 2100:1 partition ratio, the equivalent BAC would be .084 percent if the partition ratio were

---

[1] The trial court held a hearing on the State's motion in limine on the morning of trial before the jury was brought in. At the behest of the trial court, the state chemist was examined and cross-examined at that hearing concerning the variability of partition ratios.

[2] The district court judge who presided over the *Hanks* case also presided over a case named *State v. Austin*, which involved the same attorneys and identical issues. In an October 29, 1999 entry order, the court announced that it was incorporating the record of the *Austin* proceeding into the record of the *Hanks* proceeding.

actually 1600:1 and .157 percent if the partition ratio were actually 3000:1.

In its motion in limine, the State sought to prevent defendant from cross-examining its expert to elicit facts such as these, reasoning as follows. Since 1989, the DWI laws have defined "alcohol concentration" to mean either "the number of grams of alcohol per 100 milliliters of blood" or "the number of grams of alcohol per 210 liters of breath." See 23 V.S.A. § 1200(1)(A)-(B). Thus, the Legislature has effectively accepted a standard partition ratio of 2100:1 and permitted BrAC samples to stand independently. In 1991, the Legislature redefined the term "evidentiary test" to mean a breath or blood test that indicates a "person's alcohol concentration," as opposed to "the weight of alcohol in a person's blood, as shown by analysis of the person's breath or blood," as it was previously defined. 23 V.S.A. § 1200(3); 1991, No. 55, § 1. Further, the permissive inferences contained in § 1204 allow a jury to infer intoxication based upon a person's "alcohol concentration," which, as noted, is defined on the one hand as the number of grams of alcohol per 210 liters of breath, independent of any conversion to a blood-alcohol level.

The State acknowledges that evidence on the variability of partition ratios was routinely permitted before the 1991 amendments to the DWI laws. E.g., *State v. Robitaille*, 151 Vt. 380, 383-84, 561 A.2d 412, 414 (1989) (on cross-examination, state chemist conceded that partition ratios varied from 1375:1 to 3000:1). In the State's view, however, given the legislatively adopted partition ratio of 2100:1 and the amended definition of alcohol concentration to include the number of grams of alcohol per 210 liters of breath, independent of a specified BAC level, any evidence on partition-ratio variation would be irrelevant, and worse, confusing and misleading because it would subvert the legislative statement of what the law is on this subject. According to the State, permitting an inquiry into partition-ratio variation would ignore the performance standards of the Department of Health, which require a partition ratio of 2100:1, and would improperly allow the jury to reject the statutory definitions of "evidentiary test" and "alcohol concentration."

Before granting the State's motion in limine, the trial court reviewed several memoranda of law submitted by the parties, heard extensive oral argument from the attorneys, and listened to both direct and cross-examination of the state chemist concerning partition-ratio variations and related matters. In the end, the court agreed with the State that, because the permissive inferences in § 1204 refer to a

person's "alcohol concentration," which is alternatively and independently defined by Vermont law as "the number of grams of alcohol per 210 liters of breath," evidence concerning the partition ratio between BrAC and BAC is simply not relevant. The court also stated that, to the extent that such evidence had some limited relevance, it would be outweighed by considerations of undue prejudice and jury confusion. In making this judgment, the court indicated that it was adopting the analysis of the California Supreme Court in a case involving a prosecution for driving with a BrAC exceeding the legal limit. See *People v. Bransford*, 884 P.2d 70, 74 (Cal. 1994) (because statutory provision prohibited driving with BrAC above specified level, and BrAC was defined on basis of grams of alcohol per 210 liters of breath, evidence on variability of partition ratios was not relevant in prosecution alleging driving with BrAC above statutory limit).

On appeal, defendant argues that the court's decision violated his constitutional right to confront and cross-examine the State's expert witness. In defendant's view, testimony concerning the variability of partition ratios was both relevant and exculpatory because it would have demonstrated the possibility that the test result in this case was overstated and thus provided a basis for the jury to reject the permissive inferences contained in § 1204. Defendant contends that *Bransford* and other cases relied on by the State are distinguishable because they concern so-called "per se" DWI violations — violations of statutes making it unlawful to drive with a BAC or BrAC above a specified level — rather than "generic" DWI violations — violations of statutes making it unlawful to drive while under the influence of intoxicating liquor. Defendant concedes that evidence on the variability of partition ratios may not be admissible in cases involving per se violations under § 1201(a)(1), but contends that such evidence is relevant in cases involving generic violations under § 1201(a)(2). We agree.

■ Without reaching defendant's constitutional claim of error, we conclude that the court abused its discretion by prohibiting defense counsel from questioning the State's expert on the variability of partition ratios. All relevant evidence is admissible except as limited by constitutional, statutory, or other law. V.R.E. 402. Thus, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is admissible, V.R.E. 401, except that the evidence "may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." V.R.E. 403.

The admissibility of evidence is generally addressed to the sound discretion of the trial court, *State v. Goodnow*, 162 Vt. 527, 530, 649 A.2d 752, 755 (1994), and thus, the trial court retains wide latitude to impose reasonable limits on cross-examination to prevent, among other things, undue prejudice and confusion of the issues. *State v. Cartee*, 161 Vt. 73, 77, 632 A.2d 1108, 1111 (1993). Hence, this Court will not disturb the trial court's determination on evidentiary questions, including the scope of cross-examination, unless it is demonstrated that the court has abused its discretion. *State v. Webster*, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996); *Goodnow*, 162 Vt. at 530-31, 649 A.2d at 755. At the same time, however, we have recognized the integral value of cross-examination as a tool for seeking the truth in legal proceedings and have recognized the right of defendants in criminal cases to conduct reasonable cross-examination of the witnesses against them. See *Webster*, 165 Vt. at 56, 675 A.2d at 1332.

In this case, defendant was not prosecuted for driving with a BrAC above the legal limit; rather, he was charged with driving while under the influence of intoxicating liquor. Thus, the State was required to prove "that defendant had lost full control over the faculties of mind and body due to the effect of intoxicating liquor." *State v. Gray*, 150 Vt. 184, 193, 552 A.2d 1190, 1196 (1988); see *State v. Bradbury*, 118 Vt. 380, 382-83, 110 A.2d 710, 711 (1955) (DWI law prohibits operation of motor vehicle while under influence of intoxicating liquor "in the slightest degree"). To make its case, the State could present not only evidence of defendant's condition at the time of operation, but also a test result pursuant to the permissive inferences contained in § 1204. *State v. Dumont*, 146 Vt. 252, 254 n.*, 499 A.2d 787, 789 n.* (1985). As explicitly stated in § 1204(b), however, allowing the use of test results as permissive inferences in generic DWI prosecutions under § 1201(a)(2) "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of intoxicating liquor."

The permissive inference allowed, but did not require, the jury to find the inferred fact that defendant was intoxicated. See *State v. McBurney*, 145 Vt. 201, 205, 484 A.2d 926, 928 (1984). Unlike a rebuttable presumption, a permissive inference does not "effectively place[] the burden of going forward with the evidence on the party against whom it operates." *State v. Pluta*, 157 Vt. 451, 453-54, 600 A.2d 291, 293 (1991); see *McBurney*, 145 Vt. at 205, 484 A.2d at 928. In

*Pluta*, the state chemist testified at trial that it is possible for a person to have a test result indicating a BAC over the legal limit within two hours of operation and yet for that person's alcohol concentration to have actually been under the legal limit at the time of operation. The issue was whether that testimony rebutted the statutory presumption that in a civil suspension proceeding if a test result exceeding the legal limit was obtained within two hours of operation, then it shall be presumed that the defendant's alcohol concentration exceeded the legal limit at the time of operation. See 23 V.S.A. § 1205(n) (formerly § 1205(m)). We stated as follows:

> To rebut a statutory *presumption* the opponent's evidence must do more than raise a mere theoretical possibility that the presumed fact does not exist. . . . Otherwise, the use of a presumption to shift the burden of going forward with certain evidence would be meaningless. Since a rebuttable presumption already assumes that the presumed fact will not be true in all cases, it is not rebutted simply by recognizing the possibility that it can be rebutted. To fairly put the presumed fact in issue, specific evidence is required to show that the presumed fact was not true in the particular case, given its actual underlying facts and circumstances.

*Pluta*, 157 Vt. at 454, 600 A.2d at 293 (emphasis added) (citation omitted).

The situation is not the same when a permissive inference is involved. A permissive inference does not shift the burden of going forward to the defendant; rather, as noted, the trier of fact may choose to accept or reject the inference regardless of whether the defendant elects to present evidence to challenge it.

On the other hand, any evidence raising a doubt as to defendant's condition, which is the ultimate question in a generic DWI prosecution under § 1201(a)(2), is relevant and admissible. Here, defendant presented testimony indicating that he showed few, if any, signs of impairment. To bolster that testimony and explain how his apparent lack of impairment was consistent with a test result inferring that he was in fact impaired, he sought to elicit on cross-examination testimony from the state chemist that it is possible for a breath-test result to inaccurately reflect the level of impairment if the partition ratio is different from the statutorily assumed ratio because of various facts or circumstances. Though not highly probative given the unlikelihood that defendant's partition ratio at the time of operation

fell outside the normal curve, such evidence was unquestionably relevant because it had some tendency to explain the alleged inconsistency between defendant's condition and the test result. Cf. *State v. Rollins*, 141 Vt. 105, 110, 444 A.2d 884, 887 (1982) (" 'It can well be argued that if a person exhibited no physical signs of intoxication whatever but that the chemical test for alcohol shows a level above .10% that the test was inaccurate.' ") (quoting 1 R. Erwin, Defense of Drunk Driving Cases § 16.05, at 16-25 (3d ed. 1981)).

■ We are not persuaded by the State's arguments that allowing defense counsel to cross-examine the state chemist concerning the variability of partition ratios would be inconsistent with the statutory scheme and lead to jury confusion. It is true that the Legislature has defined BrAC in terms of "the number of grams of alcohol per 210 liters of breath," § 1200(1), and that permissive inferences may apply whenever a defendant's "alcohol concentration," as defined by statute, exceeds 0.08. But allowing testimony on the variability of partition ratios would not prevent the jury from accepting the statutory inference. Because defendant is charged with driving while under the influence rather than driving with an alcohol concentration exceeding the statutory limit, admitting scientifically accepted evidence concerning the variability of partition ratios will not negate a statutory offense or even an element of a statutory offense; rather, it will merely allow defendant to challenge the permissive inference and the State's charge that he was impaired. Thus, the cases relied upon by the trial court and the State are not on point. See *Bransford*, 884 P.2d at 74 n.10 (holding that evidence on variability of partition ratios is irrelevant with respect to prosecution under per se statutory provision defining offense on basis of grams of alcohol per 210 liters of breath, and declining to address whether refusal to allow such evidence in generic DWI prosecutions would convert permissive inference of impairment into impermissible mandatory presumption); see also *Brayman*, 751 P.2d at 296 (by redefining per se DWI offense in terms of specified breath-alcohol ratio, statutory amendments rendered evidence of relationship of breath alcohol to blood alcohol irrelevant "because breath alcohol content now forms an element of the per se DWI offense").

Evidence on the variability of partition ratios would simply reveal to the jury that the breath-test result is based on a statutorily accepted conversion rate that tends to favor defendants, but that the result is not unassailable with respect to demonstrating impairment. We fail to see how such evidence would be confusing to the jury or unduly prejudicial to the State; to the contrary, not allowing defendants to

reveal these scientifically recognized facts would make it difficult, if not impossible, for a defendant to challenge a test result that is admissible in generic DWI prosecutions only as a permissive inference on the ultimate question of impairment. Accordingly, we conclude that the district court abused its discretion in determining that such testimony would be unduly prejudicial and confusing.

Not surprisingly, the State has not argued, in the alternative, that any error on the part of the trial court in limiting defendant's cross-examination of its expert was harmless. The question of whether defendant was impaired was hotly contested at trial. In closing argument, the state's attorney repeatedly acknowledged that defendant was not "falling down" drunk, but emphasized that, under the law, the State had to prove only that defendant was slightly impaired. The state's attorney also emphasized the existence of the permissive inference created by the test result, stating that it indicated defendant's alcohol concentration was well over the legal limit at the time of operation. Under these circumstances, the trial court's limitation of relevant and potentially exculpatory testimony concerning the variability of partition ratios cannot be deemed harmless. See *State v. Carter*, 164 Vt. 545, 555, 674 A.2d 1258, 1265 (1996) (adopting beyond-reasonable-doubt standard for determining whether nonconstitutional errors are harmless in criminal cases).

*Reversed.*