2008 VT 24

### State of Vermont v. Thomas S. Sharrow

[949 A.2d 428]

No. 06-056

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 7, 2008

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Robert Gardner*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Thomas S. Sharrow appeals from a conviction for attempted second degree murder following a jury trial in Chittenden District Court. Defendant argues that he was deprived of his right to an impartial jury when the trial court refused to excuse a police officer from the jury for cause. Defendant also argues that the court made a series of erroneous evidentiary rulings. Finally, defendant argues that the trial court erred in admitting evidence of a pending criminal charge without a grant of immunity. We conclude that neither the trial court's refusal to excuse the police officer from the jury nor its failure to grant defendant immunity constituted prejudicial error, and that defendant's evidentiary arguments either lack merit or were not preserved. We therefore affirm.

¶ 2. Defendant was charged with attempted murder after an altercation between defendant and the complainant, his then-girlfriend, that took place in the early morning of October 4, 2003 resulted in her receiving six knife wounds to her head, neck, arm

and back. The State's theory of the case was that defendant, upset that the complainant had called the police after he broke into her apartment and assaulted her on the evening of October 3, reentered the complainant's apartment early the next morning and repeatedly stabbed her. In a motion in limine, the State sought to admit four prior incidents of misconduct to provide context for the charged incident, including a July 2003 incident that resulted in charges of aggravated domestic assault against defendant that were still pending at the time of defendant's attempted murder trial. The trial court granted the State's motion as to all four incidents.

¶ 3. Defendant's version of events was different. Defendant asserted that the stab wounds the complainant sustained were the unintended result of a violent struggle that took place after the complainant came at defendant with a knife. Defendant claims that to support his theory of self defense at trial he wanted to elicit testimony about and enter into evidence a short story that the complainant had written and shared with defendant before the charged incident in which a woman stabs her lover with a corkscrew.[1] The State filed a motion to exclude the short story. The trial court barred defendant from introducing the story into evidence or using it to cross-examine the complainant in its decision on the State's motion, but ruled that defense counsel could question defendant about the story when he testified. The trial court also allowed defendant to impeach the complainant by asking whether, in the past, she had made a false report about an ex-boyfriend. The trial court did not, however, allow defendant to ask about specifics of the alleged report.

¶ 4. During the jury draw, defendant challenged for cause a venireperson who was employed as a police officer. Defendant argued that, in the past, the prospective juror had taught some of the law enforcement personnel the State planned to call as witnesses at the police academy and had worked with some of them in his capacity as a police officer. The challenge was denied, and defendant subsequently used his second preemptory challenge

---

[1] Defendant actually argues that he sought to enter into evidence *two* short stories about women stabbing their lovers. However, it is not clear from the record whether a second story was ever discovered, and defendant has not pointed to any place in the record, nor can we find any, showing that he proffered a second story. Moreover, the record suggests that the second story was written *after* the charged incident and was actually about a *man* killing his lover with a knife.

to strike the prospective juror. Defendant also challenged another prospective juror for cause on the grounds that she was an auxiliary police officer currently working in a lab with two witnesses from whom the State planned to elicit technical DNA evidence. The trial court excused this prospective juror for cause for this reason.

¶ 5. Defendant first argues that the trial court's failure to excuse the first prospective juror for cause deprived him of his right to an impartial jury. The State argues that defendant has failed to preserve this argument for appellate review. Without deciding whether defendant has, in fact, preserved this argument, we hold that the trial court did not err by failing to excuse the prospective juror for cause.

■ ¶ 6. Criminal defendants have a constitutional right to trial by an impartial jury. U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury"); Vt. Const. ch. I, art. 10 ("in all prosecutions for criminal offenses, a person hath a right to . . . a speedy public trial by an impartial jury"); see also *State v. Holden*, 136 Vt. 158, 160, 385 A.2d 1092, 1094 (1978). Trial courts must safeguard this right by excluding from the jury persons who evince bias against the defendant.

■ ¶ 7. "Traditionally, challenges for cause have been divided into two categories: (1) those based on actual bias, and (2) those grounded in implied bias." *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997). In Vermont, we recognize both actual (or fixed) bias and implied bias as proper grounds for challenges for cause. See, e.g., *State v. Grega*, 168 Vt. 363, 369-70, 721 A.2d 445, 450-51 (1998) (evaluating whether juror had fixed bias); *State v. Percy*, 156 Vt. 468, 478-79, 595 A.2d 248, 253-54 (1990) (evaluating both whether juror had fixed bias and whether this Court should infer bias); *State v. Kelly*, 131 Vt. 358, 360-61, 306 A.2d 89, 90 (1973) (evaluating whether trial court should have inferred bias). Courts must sustain a party's challenge for cause where the prospective juror demonstrates fixed bias or where the law infers that the prospective juror is biased. See *Percy*, 156 Vt. at 478-79, 595 A.2d at 253-54. Defendant argues that the court erred by denying defendant's for-cause challenge of the prospective juror on the basis of a perceived fixed bias. In the alternative, defendant urges us to hold that the law should infer that the prospective juror is biased.

¶ 8. A prospective juror has a fixed bias when, through his or her answers to questions posed on voir dire, the potential juror evinces a state of mind inconsistent with deciding the case fairly. *Id.* at 478, 595 A.2d at 253; see also *Jones v. Shea*, 148 Vt. 307, 309, 532 A.2d 571, 573 (1987) (holding that a potential juror is subject to challenge for cause if, under examination, the juror "exposes a state of mind evincing a fixed opinion, bias, or prejudice" (quotation omitted)). A prospective juror's statement that he may have trouble putting aside his prejudices, making a decision based only on the evidence, or applying a burden of proof or law with which he disagrees indicates fixed bias. See *State v. Santelli*, 159 Vt. 442, 446, 621 A.2d 222, 224 (1992) (juror who stated that a refusal to take a breath test was proof positive of the defendant's guilt and that juror would not listen to the defendant's explanation as to his reasons for refusal demonstrated fixed bias); *State v. McQuesten*, 151 Vt. 267, 270, 559 A.2d 685, 686 (1989) (jurors who acknowledged possible inability to put aside prejudices against persons accused of driving under the influence demonstrated fixed bias); *Holden*, 136 Vt. at 161, 385 A.2d at 1094 (juror who "expressed her belief that a defendant had an obligation to prove his innocence" demonstrated fixed bias). And while "[k]nowing a witness does not automatically require removal of a prospective juror," a potential juror has a fixed bias when he "indicates an inclination to believe or disbelieve the testimony of someone he knows." *State v. Doleszny*, 146 Vt. 621, 622, 508 A.2d 693, 694 (1986). In *Doleszny*, for instance, we held that a prospective juror who expressed doubt concerning his ability to impartially weigh testimony of a key prosecution witness whom he knew personally demonstrated fixed bias. *Id.*

¶ 9. On the other hand, where a prospective juror has stated that he can judge the case fairly, or has at least failed to state that he could not, we have been reluctant to conclude that the potential juror had a fixed bias as a matter of law. In *State v. Hohman*, for instance, we held that a prospective juror who was familiar with an earlier trial of the defendant did not necessarily demonstrate fixed bias where she said that she could be impartial despite her knowledge. 138 Vt. 502, 511-12, 420 A.2d 852, 858 (1980), *overruled on other grounds*, *Jones*, 148 Vt. at 309, 532 A.2d at 572. We have even been reluctant to hold that a potential juror's opinion that police officers are more truthful than others demonstrated fixed bias as a matter of law in cases where "[t]he

juror never stated that he would automatically assume that a police officer is speaking truthfully." *Percy*, 156 Vt. at 480, 595 A.2d at 255. While a juror's stated confidence in his own impartiality is not dispositive of the question of fixed bias, "in the absence of an indication of bias in the record we will not upset the determination of the trial judge, based, as it was, upon the actual observation of the juror." *Id.* at 479, 595 A.2d at 254 (quotation omitted).

¶ 10. The record reflects that the prospective juror had been a police officer for more than twenty-five years, had taught at the police academy for thirteen years, was currently employed by the Colchester Police Department, and knew — in those various capacities — several of the Burlington police officers the State planned to call as witnesses. On voir dire, the prospective juror also indicated that he was familiar with domestic violence cases and taught classes about domestic violence at the police academy and elsewhere. The following exchange between defense counsel and the prospective juror took place on voir dire:

MR. GRIFFIN: . . . So, how — you indicated, and I think quite honestly that you could be fair and impartial.

[PROSPECTIVE JUROR]: I think so.

MR. GRIFFIN: But you have a life experience not just in law enforcement, but certainly with some of these officers, that you've worked with side-by-side and will continue to contact with and work with after your service as jurors are over.

[PROSPECTIVE JUROR]: Yes.

MR. GRIFFIN: So, how is it that you're putting all of that out of your mind in terms of listening to the evidence?

[PROSPECTIVE JUROR]: In addition to knowing them . . . I know what needs to be proven. If it's proven, it's proven. I mean, I've been around long enough to know that there are times when you've got to be impartial. There are times when you've got to set aside — and most of those officers I think are going to understand that. That if the case wasn't proven, the case wasn't proven. I have confidence in them and their work

ethic, their abilities, but the bottom line is that it's got to be proven here, apart from — and I would hope they hold me in the same respect if they happen to sit on one of my cases.

MR. GRIFFIN: Okay. So, despite your prior knowledge and associations and, in some cases, friendships with some of these officers, you're willing to hold them to that standard?

[PROSPECTIVE JUROR]: That's what I think they would be expecting.

. . . .

MR. GRIFFIN: . . . As the evidence unfolds, if you decide that in fact they blew procedure out of the water, . . . but you still may have a sense that the defendant did something wrong, are you really going to hold him to that high standard, honestly?

[PROSPECTIVE JUROR]: It's going to be tough. I know what the procedures are. I've been familiar with the practical aspects of it. I would hope that they're following that. The ends don't justify the means.

MR. GRIFFIN: Okay.

[PROSPECTIVE JUROR]: If there was something that impinged the integrity of the evidence or the gathering, then I would have an issue with that and I don't think that you'll find too many that have been through my blocks that I haven't said you've got to dot your "I's" and cross your "T's," otherwise, you deal with the consequences, and if you want to take shortcuts, you deal with them.

¶ 11. The trial court is in a unique position to evaluate juror bias, and "[g]iven the special capacity of the trial judge to evaluate [fixed] bias on the part of prospective jurors, that judge's determination in this regard is accorded great deference, since 'an appellate court [cannot] easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses.'" *Torres*, 128 F.3d at 44 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion)). In fact, "[t]here are few aspects of

a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury." *United States v. Ploof*, 464 F.2d 116, 118-19 n.4 (2d Cir. 1972); see also *United States v. Garcia*, 936 F.2d 648, 653 (2d Cir. 1991).

■ ¶ 12. We are not prepared to say that the trial court abused its broad discretion in failing to excuse the prospective juror for fixed bias on the basis of this record. In the case before us, the prospective juror repeatedly and thoughtfully stated that he would be able to maintain impartiality. Although he candidly indicated that it would be "tough" for him to decide the case if the officer-witnesses "blew procedure out of the water" in gathering evidence and he suspected defendant "did something wrong," he unequivocally and confidently reaffirmed his intention and ability to do so. The prospective juror's statements that "[t]he ends don't justify the means," and that "you deal with the consequences . . . if you want to take shortcuts" evidence an appreciation for the importance of procedure in criminal justice that we dare say likely exceeds that of many jurors. We therefore hold that the prospective juror did not demonstrate fixed bias as a matter of law; the trial court did not err by failing to excuse him.

¶ 13. Defendant makes much of the fact that the trial court cited its own confidence in the trustworthiness of officer-jurors in denying defendant's challenge to the prospective juror. However, because the record indicates that the trial court relied on the prospective juror's responses on voir dire in denying defendant's challenge, we are satisfied that the trial court exercised its discretion appropriately. Cf. *Percy*, 156 Vt. at 480, 595 A.2d at 255 (court did not abuse discretion by failing to excuse potential juror who expressed opinion that police officers are more truthful than others where "[t]he juror never stated that he would automatically assume that a police officer is speaking truthfully").

■ ¶ 14. Defendant argues, in the alternative, that the trial court should have inferred that the prospective juror was biased. Implied bias is " 'bias conclusively presumed as a matter of law,' " which "is attributed to a prospective juror regardless of actual partiality." *Torres*, 128 F.3d at 45 (quoting *United States v. Wood*, 299 U.S. 123, 133 (1936)). The law infers bias when, irrespective of the answers given on voir dire, the prospective juror has such a close relationship with a participant in the trial — a witness, a

victim, counsel, or a party — that the potential juror is presumed unable to be impartial. See, e.g., *Percy*, 156 Vt. at 478-79, 595 A.2d at 254. The United States Court of Appeals for the Second Circuit articulates the relevant inquiry as "whether an average person in the position of the juror in controversy would be prejudiced." *Torres*, 128 F.3d at 45. Moreover, "in determining whether a prospective juror is impliedly biased, his statements upon voir dire [about his ability to be impartial] are totally irrelevant." *Id.* (quotation omitted).

¶ 15. We have inferred bias where potential jurors were current patients of a doctor who was a defendant in a malpractice action despite the prospective jurors' statements that they could deliberate fairly. *Jones*, 148 Vt. at 309-10, 532 A.2d at 573. In *Jones*, we held that "th[e] powerful trust that a patient may have in his physician's professional judgment" counseled in favor of recognizing implied bias where the physician-patient relationship is ongoing. *Id.* at 310, 532 A.2d at 573. But see *Grega*, 168 Vt. at 369-70, 721 A.2d at 450-51 (upholding trial court's determination that patient-juror did not have fixed bias where her physician was a witness but not evaluating whether bias should have been implied). We have also reasoned that a prospective juror who was the mother of a secretary at the state's attorney's office and the aunt of one of the guards at a state prison was presumptively unable to be impartial where the defendant stood accused of attacking another state prison guard. *Kelly*, 131 Vt. at 360-61, 306 A.2d at 90. In *Kelly*, we reasoned that "human nature being what it is, the trial court could have well presumed that she might be unconsciously influenced by her relationships with those involved in law enforcement agencies." *Id.* at 361, 306 A.2d at 90.[2]

¶ 16. However, "the doctrine of implied bias is reserved for exceptional situations in which objective circumstances cast concrete doubt on the impartiality of a juror." *Torres*, 128 F.3d at 46 (quotation marks omitted); see also *Smith v. Phillips*, 455 U.S.

---

[2] According to Blackstone, it is appropriate to exclude a prospective juror for implied bias when a showing is made " 'that [he] is of kin to either party within the ninth degree; that he has been arbitrator on either side; that he has an interest in the cause; that there is an action pending between him and the party; that he has taken money for his verdict; that he has formerly been a juror in the same cause; that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him.' " *Smith v. Phillips*, 455 U.S. 209, 232 (1982) (Marshall, J., dissenting) (quoting 3 W. Blackstone, Commentaries 480-81 (W. Hammond ed. 1890)).

209, 222 (1982) (O'Connor, J., concurring) ("While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias."). Accordingly, we have refrained from inferring bias "where a juror is a *former* patient of a defendant-doctor in a malpractice suit," *Jones*, 148 Vt. at 310, 532 A.2d at 573 (emphasis added), and in cases where prospective jurors in sex-crime trials are related to victims of other sex crimes. *Percy*, 156 Vt. at 479-80, 595 A.2d at 254.

¶ 17. We will refrain from inferring bias in this case as well. We will not attribute to the prospective juror — by virtue of his status as a former teacher, an acquaintance or an employee of a neighboring police force — a per se inability to impartially judge the testimony of the officer-witnesses. The prospective juror does not stand in such a position in relation to the officer-witnesses that he likely has a "powerful trust" in their "professional judgment" analogous to the trust a patient has for her doctor. *Jones*, 148 Vt. at 310, 532 A.2d at 573. A former teacher, acquaintance, or member of the same profession as a witness is not so likely to trust that witness's testimony as to be automatically excludible for cause; in fact, such a prospective juror may as well have unique reasons to be wary of such witness testimony.

¶ 18. We are also cognizant of the fact that to imply bias to the prospective juror by virtue of his status as a former teacher, acquaintance or employee of a neighboring police force to the officer-witnesses would have profound implications unnecessary to protect defendants' rights to impartial juries. For instance, inferring bias to a seasoned police-academy teacher on the basis of this status alone would effectively disqualify him from jury service for any case involving police-officer witnesses. It is simply not necessary to do so in order to preserve the right to trial by impartial jury where a defendant has an opportunity to show actual bias. Cf. *Smith*, 455 U.S. at 216 (noting that " '[a] holding of implied bias to disqualify jurors because of their relationship with the Government is [not] permissible. . . . Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury.' " (quoting *Dennis v. United States*, 339 U.S. 162, 171-72 (1950)). We reiterate that we found the prospective juror's answers on voir dire adequate in light of precedent to sustain the trial court's discretionary decision not to excuse him for cause.

¶ 19. Defendant also complains that the court exercised its discretion inconsistently by excusing the auxiliary police officer

and not the prospective juror for cause, pointing out that an auxiliary trooper is also a member of law enforcement. We see nothing inconsistent in the court's use of its discretion. The court excluded the auxiliary trooper for cause because she worked on a daily basis in the crime lab with two forensic witnesses testifying in defendant's case. As noted, the prospective juror's relationships with the officer-witnesses were more attenuated. Cf. *People v. Stremmel*, 630 N.E.2d 1301, 1315 (Ill. App. Ct. 1994) (inferring juror bias where officer-juror current member of same police department as and personally knew officer-witnesses and where close case hinged on credibility of officer-witnesses); *Commonwealth v. Jones*, 383 A.2d 874, 877 (Pa. 1978) (inferring juror bias where officer-juror current member of same police department as officer-witnesses); *Commonwealth v. Fletcher*, 369 A.2d 307, 308-09 (Pa. Super. Ct. 1976) (same where officer-juror also knew assistant district attorney who tried the case and where officer-juror had been a victim of the type of crime charged in the past).

¶ 20. Defendant's next argument is that several of the trial court's evidentiary rulings were erroneous. In particular, defendant argues that the complainant's short story and details about the content of the false allegation she lodged against an ex-boyfriend were admissible as prior bad acts under Vermont Rule of Evidence 404(b), and were relevant to show defendant's state of mind as a part of his claim of self-defense. Defendant also argues that Rule 404(b) required the trial court to allow defendant to cross-examine the complainant about the short story.

¶ 21. Defendant did not properly preserve these evidentiary arguments. A defendant must specifically raise an issue with the trial court in order to preserve it for review on appeal. See *State v. Shippee*, 2003 VT 106, ¶ 10, 176 Vt. 542, 839 A.2d 566 (mem.); V.R.E. 103(a)(1). The record reveals that defense counsel did not object when the court prohibited him from eliciting testimony as to the nature of the false allegation. Neither did defendant argue to the trial court that the short story was admissible, or that cross-examination of the complainant thereon was appropriate, under Rule 404(b). Therefore, neither argument is preserved for our review. See *State v. Lee*, 2005 VT 99, ¶ 14, 178 Vt. 420, 886 A.2d 378 (defendant failed to preserve his argument that the trial court should have examined the admissibility of gun evidence under rule that prohibited evidence of other crimes to prove bad

character, where defendant raised the issue for the first time on appeal).

¶ 22. Defendant also claims that the court erroneously excluded evidence that the complainant was previously convicted of punching her ex-boyfriend. Specifically, defendant argues that this bad-act evidence was also admissible to show defendant's state of mind, as a part of his claim of self defense. Defendant cites a wide range of authority for the proposition that "[w]hen a defendant is aware of the victim's past acts of violence, and evidence of these acts of violence is offered to prove the reasonableness of the defendant's use of . . . force, this evidence of the victim's specific acts is not barred." *Allen v. State*, 945 P.2d 1233, 1241 (Alaska Ct. App. 1997). Defendant, however, does not identify any portion of the record to show that the issue was raised or ruled upon. Defendant has the burden "to produce a record which supports his position on the issues raised on appeal." *Condosta v. Condosta*, 142 Vt. 117, 121, 453 A.2d 1128, 1130 (1982); see also *In re J.S.*, 153 Vt. 365, 367 n.2, 571 A.2d 658, 659 n.2 (1989) (quoting same). Moreover, we have read the transcripts of the proceedings below and find no evidence that defendant ever moved to admit this evidence. The State argues that defendant did not preserve this argument for appeal. We agree. Therefore, we do not address this portion of his argument.

¶ 23. Defendant's last evidentiary argument is that the trial court erred by admitting into evidence a so-called "third knife," a knife blade discovered at the scene by a domestic violence victim's advocate. In defendant's view, this evidence was not relevant within the meaning of Rule 401 because it "was obviously placed there after the crime scene had been processed and released" and because its origin was unknown.

¶ 24. When it sought admission of the knife blade, the State provided as foundation the testimony of the victim's advocate who had discovered the knife. The advocate stated that the blade had come loose and fallen when she moved a couch cushion at the crime scene two days after the altercation took place. Defendant objected to the admission of the blade on relevance grounds, asserting that the blade had been found "two days after the fact" and that there was thus insufficient proof that it had been present at the scene when the crime was committed. The court ultimately decided to admit the blade into evidence. Reasoning that knives

collected from crime scenes were unquestioningly relevant, the court determined that, based on the testimony of the victim's advocate, the jury could have believed that she had discovered the blade upon moving the couch cushions.

¶ 25. We reverse similar evidentiary rulings only "when we find an abuse of . . . discretion resulting in prejudice." *State v. Ovitt*, 2005 VT 74, ¶ 8, 178 Vt. 605, 878 A.2d 314 (mem.). Defendant objected to the admission of the blade on relevancy grounds. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. Defendant's argument is similar to one we found persuasive in *State v. Hooper*, 151 Vt. 42, 557 A.2d 880 (1988). In that case, defendant challenged the court's decision to exclude evidence of semen found on the victim's body where no laboratory analysis could establish that the semen belonged to the defendant. Without foundation to link the semen to the defendant, we agreed that "the presence of semen is not probative of defendant's guilt . . . or any other fact that is of consequence to the action." *Id.* at 47, 557 A.2d at 882.

¶ 26. The concerns present in *Hooper* are not at issue here. The State did create a foundation for the relevance of the blade by offering the victim's advocate's testimony. Defendant has not argued or demonstrated why the victim's advocate had reason to lie. The test of relevancy is very broad, *id.* at 46, 557 A.2d at 882, and covers "relevant facts . . . not limited to those formally put in issue," germane propositions, background facts, and propositions pertinent to credibility. Reporter's Notes, V.R.E. 401. We agree with the trial court that the blade had probative value. If the jury believed the victim's advocate's statement, the discovery of the knife could lend credence to the theory that the knife was the attempted-murder weapon and had been hidden by defendant. The existence of an attempted-murder weapon is relevant, and evidence of concealment is relevant to show defendant's consciousness of guilt. *State v. Smith*, 815 A.2d 1216, 1229 (Conn. 2003); cf. *People v. Bates*, 546 P.2d 491, 493 (Colo. 1976) (holding that evidence of flight is relevant to show consciousness of guilt). We find no error in the court's decision.

¶ 27. Finally, defendant argues that the trial court committed plain error by failing to grant him immunity for his

testimony concerning the prior bad act which was the subject of a charge of domestic assault still pending at the time of trial.[3] Defendant's immunity argument fails because he has not demonstrated prejudice. Defendant has not attempted to show how the outcome of his trial would have differed had he testified with immunity. Defendant does not even contend that the defense kept any information from the jury as a result of the court's failure to grant immunity. We therefore decline to rule on defendant's immunity argument. See *State v. Cyr*, 169 Vt. 50, 56, 726 A.2d 488, 493 (1999) (rejecting similar argument where defendant "failed to demonstrate any plausible theory of how the outcome would have been different if he had been able to testify with immunity"); *In re D.C.*, 157 Vt. 659, 660, 613 A.2d 191, 191-92 (1991) (mem.) (same).

*Affirmed.*

---

[3] The aggravated domestic assault charge was dismissed after defendant was sentenced on the attempted murder conviction.