Reiber, C.J.,
¶ 58. dissenting. Defense counsel asked improper and irrelevant questions during cross-examination of the key witness for the State on several charges. These questions about the victim’s interactions with other men and her sexual preferences were objected to and sustained before the witness could answer, but the questions nonetheless created implications that could undermine the witness’s credibility and could bias the jurors against her. The trial judge, who had the unique ability to listen to the tone of the questioning and observe the jurors’ reactions, determined that the questions denigrated the victim, created bias, and irreparably prejudiced the State’s case, and thus granted a mistrial. The majority reverses, concluding that the court abused *647 its discretion because, in the majority’s assessment, no actual prejudice was proven. The majority errs by focusing mainly on whether counsel’s improper and irrelevant questions were made in good faith or in violation of a clear court directive, and failing to give the trial court sufficient deference on the most important determination — the extent of bias created. Because I would affirm the grant of a mistrial, I dissent from Part V of the majority opinion.
¶ 59. As the majority recounts, the trial court’s mistrial ruling stemmed from questions addressed to defendant’s wife, the victim of several of the charges against defendant. On cross-examination, defense counsel sought to introduce an exhibit containing the victim’s communication with another man on Facebook in which the victim stated that she loved controlling men. Defendant proffered that it was relevant to rebut her claim that she was afraid of defendant’s domineering and controlling behavior. The court rejected this request, concluding there was no relevance.
¶ 60. The ensuing questions were defendant’s attempt to make the conversation relevant somehow. Counsel first attempted to introduce it as relevant to the victim’s motive for leaving defendant and for calling 911. The following exchange took place:
Q. Isn’t it a fact that you were planning on leaving [defendant] before these events occurred?
A. Honestly, I have planned on leaving him for many, many, many years, several times.
Q. And so certainly — and you were talking to other — you said you had these friends on Facebook, both men and women, but you were having some very intimate conversations with men at the time; isn’t that right?
A. Yes.

Q. Okay. Isn’t that why you called 911? You’ve had it with [defendant], you’re done. Isn’t that why?
A. No, that is not why, and I have called them in the past and that was not why.
¶ 61. Defense counsel proceeded to ask whether the victim wanted to leave the marriage because defendant was “domineering and controlling,” and the victim agreed it was one of the reasons. Counsel then stated “But isn’t it a fact that actually men who are in control — you like men who are in control?” When the victim *648 answered “Depends on what kind of control,” counsel further asked “So [the man the victim communicated with on Facebook] was talking to you about being in sexual control; isn’t that right?” The court sustained the State’s objection to this question. Defense counsel asked the victim to differentiate between the kind of control she liked and the control exerted by her husband, and then asked, “So what’s the kind of control that you want to have in a relationship . . . ?” Again, the court sustained the State’s objection.
¶ 62. It was defense counsel’s questions about the victim’s sexual preferences and implication of sexual contact with other men that motivated the State the following morning to move for a mistrial. The court made a thorough examination of the record and listened to arguments from both sides before granting the motion.
¶ 63. The State argued that defendant’s questions, particularly about sexual control and domineering behavior, served no purpose except to embarrass and humiliate the victim and to prejudice the jury against her. Defendant claimed that the questions were within the realm of appropriate cross-examination and were relevant to whether the victim had a preference for someone who is domineering and controlling, and thus whether the victim was actually afraid of defendant. Defendant contended that any error could be cured with a limiting instruction.
¶ 64. The court’s ruling was prefaced by a thoughtful explanation. The court noted that although defense counsel had not willfully violated a court order, the questions regarding the victim’s sexual preferences were not appropriate because they were not relevant to any of the issues at trial or to impeaching the victim and created undue prejudice. The court concluded that the questions created an implicit bias and unfairly undermined the victim’s credibility. The court explained that while it was difficult to ascertain the effect on the jury, it concluded that there was damage to the jury’s ability to decide the case fairly and impartially. Thus, the court granted a mistrial.
¶ 65. To avoid the bar of double jeopardy, a mistrial granted to the State over defendant’s objection must be supported by “manifest necessity.” Arizona v. Washington, 434 U.S. 497, 505 (1978). The standard for reviewing the trial court’s determination of manifest necessity in this case is highly deferential because the mistrial was granted based on improper and prejudicial remarks *649 made by defendant’s lawyer. The decision falls within an area “where the trial judge’s determination is entitled to special respect” and afforded deference. Id. at 510. Under this standard, this Court should “accord the highest degree of respect to the trial judge’s evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.” Id. at 511.
¶ 66. The majority concludes that the trial court abused that discretion here and instead makes its own finding that there was no danger of prejudice or bias. In so concluding, the majority places most emphasis on its assessment that the questions in this case were not in violation of a direct court instruction or evidentiary rule and that the attorney asked the questions in good faith. The attorney’s good faith and the lack of a pretrial ruling are of minimal relevance to the question of whether the court abused its discretion because the “necessity” of a mistrial focuses on whether the improper comments may have affected the impartiality of the jury. Id. at 511-14. Further, even if the context in which the questions were made is considered, the conclusion to be drawn from that analysis is not as clear cut as the majority presents.
¶ 67. Defense counsel was well aware that the relevancy of the victim’s communication with other men and her sexual preferences to any issue at trial was tenuous and that it was highly prejudicial. When defendant first sought to introduce the Facebook statements, the court rejected counsel’s proffer that it was relevant to whether the victim was afraid of defendant. The court warned: “This is obviously quite prejudicial. The question is whether it’s outweighed by probative value.” The court explained that there could be some relevancy if defendant could demonstrate that the victim was trying to set defendant up, but that no such basis had yet been made. During the subsequent questioning there were several objections that the court sustained, including asking whether the man the victim was communicating with asked about being in sexual control.[11] Defense counsel persisted, how *650 ever, and continued asking about the victim’s relationship with her Facebook friend. Therefore, it is clear that defense counsel was aware that the line of questioning involved evidence with limited relevance and high prejudicial effect. The trial court found, and the majority seems to agree, that the questions were improper and sought to introduce evidence that was not relevant, but was prejudicial. Therefore, although there was no specific prior directive precluding the questions, the questions did seek to admit evidence in contradiction of evidentiary rules. See V.R.E. 402 (stating evidence that is not relevant is not admissible); V.R.E. 403 (explaining that evidence may be excluded if probative value is substantially outweighed by danger of unfair prejudice).
¶ 68. Most important to the evaluation of whether these questions necessitated a mistrial was the court’s evaluation of whether they prejudiced the prosecution and created bias in the jury. The trial court acted “responsibly and deliberately” in evaluating this and in granting the State’s request for a mistrial. See Arizona, 434 U.S. at 515. The court correctly determined that the questions were improper and irrelevant to the proceeding and were prejudicial. See Stacy v. Manis, 709 S.W.2d 433, 434 (Ky. 1986) (holding that defendant’s improper question of prosecution witness caused serious and improper prejudice to state’s case and therefore mistrial was proper and no jeopardy attached); Ex parte Irving, No. 03-03-00346-CR, 2004 WL 392898, at *2 (Tex. Ct. App. Mar. 4, 2004) (unpub. mem.) (holding that defendant’s improper question to complaining witness tainted witness’s credibility and formed proper basis for granting mistrial). The questions regarding the victim’s interaction with other men on Facebook and her sexual preference for domineering men were not relevant to an issue to be decided at trial and had the potential to create bias in the jury against the victim. See Birdsong v. State, 680 S.E.2d 159, 163 (Ga. Ct. App. 2009) (concluding that improper question to complainant created prejudice and therefore court acted within its discretion in granting mistrial). Further, the victim was a critical witness for the State on these charges so any bias created against her would critically prejudice the State’s case.
¶ 69. The fact that there was no pretrial ruling or that defense counsel acted in good faith does not alleviate the impropriety of the questioning or the prejudice created by those questions. The majority fails to recognize the importance of those factors in the cases it cites. The majority provides Morris v. Livote, 962 *651 N.Y.S.2d 59 (App. Div. 2013), as an example of a case that is even less extreme and in which the appellate court held that the improper questions did not require a mistrial. The majority characterizes that case as a situation where the questions were in disregard of a specific court instruction and that even so a mistrial was not warranted. What the majority fails to recognize is that the main reason the appellate court concluded a mistrial was not necessary in that case was that the impropriety did not significantly prejudice the prosecution’s case because the witness being examined when the improper questions were made was not material and therefore there was no significant prejudice to the state’s case. Id. at 62.
¶ 70. Further, the court did not act “precipitately” in granting the State’s request; an important consideration under the U.S. Supreme Court’s framework. Arizona, 434 U.S. at 515 (holding court acted properly — “The trial judge did not act precipitately” — where it properly assessed impact of evidence and afforded consideration to both sides’ arguments). The court reviewed the record and afforded both sides an opportunity to explain their positions. The court considered alternatives and concluded that no other remedy, including a limiting instruction, would suffice because there was no reasonable means to measure the possible prejudicial impact on the jurors. The trial court was in the best position to judge whether the improper questioning and the implication created regarding the victim’s sexual preference created bias of such magnitude that it could not be cured by an instruction to the jury. See id. at 513-14 (explaining that trial judge’s decision on whether an alternative is sufficient is entitled to deference). The court acted within its discretion in determining that an instruction would have been inadequate to cure any prejudice created by those questions.
¶ 71. The majority dismisses the trial court’s assessment of prejudice and faults the trial court for failing to “establish that prejudice had actually been incurred.” Ante, ¶ 53. The majority is totally silent, however, on how the trial court is supposed to establish actual prejudice. Short of a juror admission, the court’s assessment of prejudice is made based on its observations of the courtroom proceedings, including the behavior and expressions of witnesses and jurors. This Court routinely relies on the trial judge’s assessment of bias and prejudice based on the court’s actual observations in the courtroom. See, e.g., State v. Sharrow, *652 2008 VT 24, ¶ 9, 183 Vt. 306, 949 A.2d 428 (relying on trial judge’s observation of juror in assessing possible bias). It is precisely because the trial judge has the unique ability to see and hear jurors, is “most familiar” with evidence, and has observed argument tone and juror reaction, that the appellate court should defer to the judge’s assessment of whether bias was created. Arizona, 434 U.S. at 513-14 (explaining that trial judge’s decision on whether an alternative is sufficient is entitled to deference). Indeed, the U.S. Supreme Court explained that because in most circumstances “the possible bias cannot be measured,” the appellate court must “accord the highest degree of respect to the trial judge’s evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.” Id. at 511. I would accord such deference to the trial court’s determination in this case.[12] Therefore, I dissent.
¶ 72. I am authorized to state that Justice Eaton joins this dissent.

 The majority claims that the fact there were several objections by the State is not relevant. Again, I reiterate that it is the content of the statements and their effect on the jury that is most important. If context is considered, however, it is certainly relevant that defense counsel had been warned about the line of questioning and then proceeded to continue asking questions even after the State objected and the court sustained those objections.

 Here, there is not merely the “bare assertion” of prejudice as alleged by the majority. Ante, ¶ 53. The majority does not dispute that defense counsel’s statements about the victim were prejudicial. The questions were aimed at the credibility and character of the State’s key witness on those charges. It is the extent of the prejudice on the jury that the trial court was in the best position to assess. On the record before us, this assessment was not in error.