740 A.2d 367 (1999)
In re A.B., Juvenile.
No. 99-065.
Supreme Court of Vermont.
October 4, 1999.
Before AMESTOY, C.J., and DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.

ENTRY ORDER
A.B. appeals from a family court finding of delinquency for the commission of a lewd and lascivious act upon a child under *368 sixteen, in violation of 13 V.S.A. § 2602. A.B. contends the court erred in: (1) excluding the testimony of two defense witnesses; and (2) denying a post-trial motion to dismiss. We conclude that the first claim of error has merit and, therefore, reverse.
The evidence at trial disclosed that A.B., who was fifteen years old, lived with his family in a rural area of Addision County near a duplex in which two other families with children resided. One of the families had three children: two girls, J.P. and A.P., who were thirteen and twelve years old, respectively, and a boy, T.P., who was eleven. The other family had two children: E.R., a boy of eleven, and D.A.R., a girl of seven. All of the children played together during the summer of 1997, although less so with D.A.R. because she was much younger than the rest.
In late October 1997, D.A.R.'s father called the state police to report that D.A.R. had informed him about an alleged sexual assault by a boy in the neighborhood. D.A.R., who was eight years old at the time of trial, testified that some time during the summer of 1997, A.B. had touched her "private" parts. She responded "yes" when asked on direct and redirect examination whether A.B. had touched her on the "skin," but on cross-examination stated that he had touched her "on top" of her clothes. She could not say how many times the touching had occurred, but recalled that it took place near a basketball court and a barn located in the vicinity of her house. She also recalled that A.B. had told her not to tell anyone. She responded "no" when asked whether she was afraid of A.B. She further denied that anyone had induced her to make up the accusation.
Two additional witnesses, D.A.R.'s father and her twelve-year-old neighbor, A.P., recounted statements that D.A.R. had made to them concerning A.B.'s alleged sexual abuse. The trial court, however, made no findings concerning the statements' admissibility under V.R.E. 804a, and observed in its written decision that in reaching its decision it was not necessary to rely on any evidence offered pursuant to V.R.E. 804a.
A.P. testified that the children often rode the school bus together. She recalled that D.A.R.'s demeanor changed when A.B. got on the bus, that she became quiet and looked sad. She also recalled that T.P., her eleven-year-old brother, had often been mean to D.A.R., and had become increasingly angry with A.B. as well, frequently teasing him about his weight. She recounted that she had been called to the office of the vice-principal, Mrs. Royce, about the teasing. According to A.P., the meeting with Royce took place about a week after D.A.R. informed her father about the alleged abuse.
A.B. testified on his own behalf. He denied that he had touched or otherwise molested D.A.R. He recounted an incident on the school bus in which T.P. had called him names and accused him of sleeping with his mother. He recalled another incident on the bus in which T.P. and his sister, A.P., had accused him of inappropriately touching D.A.R., and had attempted to induce D.A.R. to admit the allegation of abuse. A.B. reported at least one of the incidents to the vice-principal, Mrs. Royce, and to his parents. He recalled that several days later, D.A.R. accused him of molesting her.
The defense attempted to call both Mrs. Royce and A.B.'s father to testify about A.B.'s report of harassment. The State filed a motion in limine seeking to exclude the evidence as irrelevant. In her offer of proof, defense counsel asserted that Royce would testify that A.B. came to her in early to mid-October and told her that he was being harassed by T.P. and A.P. Counsel explained that the testimony would show the report of harassment occurred days before D.A.R.'s accusation, and that it would show a motive for D.A.R. to fabricate the allegation. More specifically, it would buttress the defense theory that T.P. had coerced D.A.R. to fabricate *369 the allegations in retaliation for A.B.'s report to Mrs. Royce. Counsel stated that the father would testify that after A.B. told him about the harassment on the bus, the father called T.P.'s family. A boyfriend of T.P.'s mother then came to A.B.'s house and made threatening statements, including allegations that A.B. had acted inappropriately toward D.A.R.
The court was unpersuaded of the relevance of the proffered testimony, explaining that there was "no logical connection between the evidence that you wish to offer and the conclusion that you want the Court to draw." Accordingly, the court excluded the evidence. In a relatively summary written decision, the court found that A.B. had committed the acts as alleged. In preparation for the disposition hearing, the court directed the Department of Social and Rehabilitation Services to prepare a disposition report, and further ordered a psychosexual evaluation of A.B. by a qualified professional. Both the psychosexual evaluation and the disposition report expressed doubt as to A.B.'s guilt. The SRS social worker stated that based upon her interview of A.B., she felt "ethically bound to note ... that [A.B.'s] denial of the offense, in my experience, is different from that of a youth just trying to stay out of trouble." The report recommended juvenile probation and individual rather than group counseling. The authors of the psychological evaluation noted that they "share[d] in the doubt" expressed by the SRS worker. The court ultimately adopted the SRS recommendations at the disposition hearing.
Based upon the doubts expressed in the SRS report and psychosexual evaluation, A.B. moved to dismiss the case in furtherance of justice, under V.R.Cr.P. 48(b)(2) (dismissal warranted if it will "serve the ends of justice"). The State opposed the motion, arguing that it was unwarranted under the multiple factors set forth in State v. Sauve, 164 Vt. 134, 140-41, 666 A.2d 1164, 1168 (1995). The court denied the motion in a brief written decision. This appeal followed.
A.B. contends the court erred in excluding the testimony of Mrs. Royce and his father. The trial court enjoys great latitude in decisions to admit or exclude evidence, and such decisions will not be reversed absent an abuse of discretion resulting in prejudice. Gilman v. Towmotor Corp., 160 Vt. 116, 122, 621 A.2d 1260, 1263 (1992). "In criminal cases, however, the broad discretion of the trial court in evidentiary matters is limited by defendant's constitutional right to confront witnesses against him and by the demands of due process." State v. Webster, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996). A.B. argues here, as below, that the proffered testimony was relevant to show a motive to fabricate the molestation allegations, and that the court's ruling unconstitutionally deprived him of a fair opportunity to present his theory of defense.
In State v. Cartee, 161 Vt. 73, 76, 632 A.2d 1108, 1110 (1993), we observed that "[i]n cases of sexual assault or abuse where the complainant is the only witness, the presence of an ulterior motive for the victim's making the accusations is often a critical issue." Such was the case here. Although the defense theory concerning the alleged inducement to fabricate was not airtight, the proffered evidence was not irrelevant or illogical as the trial court found, or merely speculative as the State argues. Indeed, the facts lent the theory a veneer of plausibility; there was some evidence that T.P. had harassed A.B. and was generally hostile to him, that D.A.R. was afraid of T.P., that T.P. had vocally attempted to persuade D.A.R. to accuse A.B. of misconduct, and that A.B. had reported T.P.'s harassment to the school vice-principal, Mrs. Royce, just days before the allegations of abuse became public. Defense counsel argued plausibly, moreover, that Royce's testimony was not cumulative; there was conflicting evidence as to whether D.A.R. had told her father about the alleged abuse before or after *370 A.B. reported T.P.'s behavior to Royce, a timing issue which Royce could have addressed. Royce could also have elaborated upon the steps which she took to intervene, again a subject relevant to the defense theory that T.P. had induced D.A.R. to fabricate the allegations in retaliation for A.B.'s reporting him to school authorities.
In a case such as this, where the only direct evidence of abuse on which the court purported to rely was the complainant's testimony, it was incumbent upon the court to be "`particularly cautious in exercising its discretion to preclude impeachment evidence offered by a defendant' due to the state and federal constitutional issues implicated in such a decision." Cartee, 161 Vt. at 77, 632 A.2d at 1111 (quoting State v. Covell, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985)). By excluding Royce's account of the report of harassment and subsequent investigation, the court was left with an incomplete picture of the defense theory of fabrication. Thus, our conclusion in Cartee applies with equal force here: "Considering the critical role complainant's testimony and credibility occupied in the trial, exclusion of the . . . evidence regarding motive was prejudicial and cannot be considered harmless error." Id. Accordingly, the judgment must be reversed and the matter remanded for a new trial.
Our conclusion renders it unnecessary at this time to address defendant's alternative claim that the court erred in denying the motion to dismiss. In the event of a retrial and finding of delinquency, the claim may be reasserted on appeal. The State's motion to strike appellate counsel's post-argument letter containing a supplemental citation is denied.
Reversed and remanded.