2008 VT 104

## State of Vermont v. Danny S. Leroux

[965 A.2d 495]

No. 07-221

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 14, 2008

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant appeals from his conviction of sexual assault, 13 V.S.A. § 3252(a)(1)(A), following a jury trial on March 13, 2007. On appeal, defendant argues that the trial court committed plain error when it admitted evidence of: (1) events demonstrating defendant's physical and emotional abuse of complainant, Nancy, and (2) several hearsay statements. We affirm.

¶ 2. The State's evidence showed the following. Nancy, an adult, first met defendant in 1999, when Nancy and her mother lived in the same building in Burlington as defendant and his wife. Defendant and his wife would visit with Nancy and her mother and have coffee at least once a week. Nancy's mother died in 2001. In the summer of 2002, defendant and his wife invited

Nancy to live with them, and the three of them later moved to Jericho.

¶ 3. While living in Jericho, Nancy's sole income was a monthly check of $600 from Social Security, $400 of which she paid to defendant and his wife for her living expenses. Defendant kept the remaining $200. On receiving the check each month, defendant often drove with his wife and Nancy to the bank drive-through window, where the checks were cashed and the money handed to defendant.

¶ 4. Defendant and his wife did not treat Nancy with respect. When defendant and his wife went out, they often locked the door to the house and left Nancy on the porch outside, without access to food or bathroom facilities. Other troubling incidents were connected to the care Nancy provided for defendant's dog. Nancy often walked defendant's dog. Once, when defendant became upset with Nancy for pulling his dog away from a puddle, he put a choker chain around Nancy's neck, tightened it, and threatened to pull her through a field with the choker chain if she treated his dog like that again. In a separate incident, defendant forced Nancy to lie on the floor like a dog, placed food and water in front of her, and ordered her to stay down until he instructed her to get up, which occurred about an hour later. Defendant also physically abused Nancy on a number of other occasions, once hitting her on the side of the face, and another time kicking her in the buttocks when she reached down to pick something up.

¶ 5. One evening in the late summer or early fall of 2005, when Nancy was in her bedroom, defendant came in and pinned her up against a glass cabinet. He pulled up her blouse and pulled her pants and underpants down around her knees. Nancy testified that defendant fondled her breasts, and his hands "came down, and . . . [were] playing with [her]." He put his mouth on her vagina and massaged her breasts. He kissed her, and then penetrated her vagina with his finger. Defendant told Nancy, "you know you want it, you know you want it." Nancy repeatedly told him to stop, and reminded him that his wife was nearby. Defendant responded that "[w]hat my wife don't know ain't going to hurt." He then put Nancy's hand inside his pants.

¶ 6. Right after this incident, Nancy went into the bathroom to see if she was bleeding, because she felt that he had injured her. She then went into the front room where defendant's wife and some family were sitting, and broke down crying as she described

what had happened. Defendant's wife told her she must be "crazy" and told her to stay in her room until "you look me in the eye and tell me Danny didn't do it." About twenty minutes later defendant's wife went to Nancy and asked whether defendant had touched her. Nancy replied that he had not, because she did not want defendant or his wife to hit her.

¶ 7. Nancy moved out of the house in November 2005. In January 2006, she was assaulted by defendant's wife on the street. At that point, Nancy decided to report the sexual assault to the police.

¶ 8. Before trial, the State filed a "Notice Of Other Bad Acts" pursuant to Vermont Rule of Criminal Procedure 26(c). See V.R.Cr.P. 26(c) (the State must provide "a written statement of the acts or offenses it intends to offer" pursuant to V.R.E. 404(b) to the defense at least seven days before trial). The notice explained the State's intention to introduce evidence of defendant's acts during the charged sexual assault, along with evidence that defendant had kicked complainant, put a dog collar around her neck, locked her out of the house when he and his wife were not home, mockingly referred to her as a virgin, and kept her Social Security check for his own use. The State posited that the complainant should be allowed to testify to "the full spectrum of abuse perpetrated by Defendant" so that the jury could have a complete understanding of the nature of the parties' relationship, and could grasp the context of the alleged sexual assault.

¶ 9. At a pretrial hearing, the State further explained that the bad-act evidence would show the abusive nature of complainant's environment. Although the court first indicated that the incident in which defendant kicked Nancy should not come in, it later stated that "whatever [was] in the notice [was] admissible, at this point." Defense counsel declined to object to the evidence proffered in the State's notice, stating that he was "willing to deal with [it] at trial."

¶ 10. At trial, complainant recounted the sexual assault and other events that had occurred while she lived with defendant and his wife. As part of this history, complainant testified, without objection, that she was ordered to stay in her room by defendant's wife until complainant recanted her claims against defendant. Complainant also testified that defendant hit her in the face and made her stay down on the floor like a dog, even though these incidents had not been disclosed in the State's Rule 26(c) notice.

No objection was made to the other bad-acts testimony. Defendant's neighbor also testified. She described Nancy as appearing fearful or nervous, and claimed that Nancy had inquired as to whether the neighbor would serve as a secret conduit for phone calls, stamps, mail, and magazines. Defendant did not object to the neighbor's testimony. The jury returned a verdict against defendant. On appeal, defendant argues that the trial court committed plain error in admitting evidence of defendant's physical and emotional abuse of Nancy beyond the facts of the sexual assault charged and in admitting Nancy's testimony about the wife's verbal order and the neighbor's descriptions of Nancy's inquiries, in violation of the rule against hearsay.

## I.

¶ 11. Defendant raises a number of challenges to the admissibility of the State's evidence of defendant's mistreatment of Nancy. Defendant argues that the State failed to disclose all of this bad-act evidence as required by Rule 26(c) and improperly introduced evidence about the incident in which defendant kicked Nancy in the buttocks, an event for which defendant was subject to other pending charges at the time of trial. Defendant also contends that this evidence was irrelevant, highly prejudicial, and barred by Vermont Rule of Evidence 404(b). See V.R.E. 404(b) (excluding, generally, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.").

¶ 12. Because defendant failed to object to the introduction of this evidence at trial, we review solely for plain error. See V.R.E. 103(a)(2) (error cannot be predicated on a ruling that admits evidence unless an objection was made at trial or plain error exists). "Plain error lies only in the rare and extraordinary cases where a glaring error occurred during trial that was so grave and serious that it strikes at the very heart of defendant's constitutional rights." *State v. Longley*, 2007 VT 101, ¶ 24, 182 Vt. 452, 939 A.2d 1028 (citation and quotations omitted). "The plain error rule should be invoked only in the most exceptional circumstances." *State v. Welch*, 136 Vt. 442, 444, 394 A.2d 1115, 1116 (1978).

¶ 13. In its notice of other bad acts, the State explained its intent to introduce evidence of a number of prior incidents of

physical and emotional abuse of Nancy by defendant. This evidence was to show the abusive context of intimidation and fear surrounding the sexual assault. At trial, the State introduced this evidence. Nancy also testified that defendant hit her in the face and treated her like a dog. Neither of these events had been disclosed in the notice of other bad acts. Defendant did not object.

¶ 14. Rule 26(c) requires the State to disclose to defendant a list of the bad acts that the State intends to present at least seven days before trial. Failure to notify defendant that Nancy would testify about the incidents where defendant hit her and treated her like a dog violated this rule. See *State v. Houle*, 162 Vt. 41, 45, 642 A.2d 1178, 1181 (1994). Even so, no plain error exists if "the jury had before it [other] substantial evidence from which [the jury] could find guilt." *Id.* "When . . . [defendant] claims plain error in the admission of prejudicial evidence, [defendant] must demonstrate that the judgment was substantially affected by admission of the testimony." *State v. Bubar*, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985); see also *State v. Muscari*, 174 Vt. 101, 117-18, 807 A.2d 407, 420 (2002) (defendant must show how he was harmed by lack of Rule 26(c) notice before this Court will reverse). Here, the evidence on which defendant predicates plain error described but two of the many claimed insults and incidents of demeaning mistreatment introduced into evidence to supply context for the alleged sexual assault. These two additional instances of claimed abuse may have been superfluous, but lent no particular credibility to any other part of complainant's version of events. Had these two abusive incidents been excluded, there remained ample evidence from which the jury could conclude beyond a reasonable doubt that defendant sexually assaulted complainant, not least of which was her explicit testimony about that event. Thus, the introduction of these additional events does not rise to the level of plain error.

¶ 15. Defendant also complains that it was plain error for the court to allow evidence of the physical and emotional abuse that was disclosed in the Rule 26(c) notice, because such testimony was not relevant, was unduly prejudicial, and was impermissible evidence of bad character. We reject defendant's claim of plain error. First, defendant consciously chose not to object to the admissibility of these acts, and elected instead to "deal with [this evidence] through argument, through evidence" at trial. We will

not find plain error based on a deliberate tactical decision by counsel. In *State v. Nguyen*, 173 Vt. 598, 795 A.2d 538 (2002) (mem.), we refused to find plain error based on the trial judge's failure to instruct the jury on a lesser-included offense when the defendant, as a tactical matter, opposed such a charge at trial. *Id.* at 601, 795 A.2d at 542-43. The present case is analogous. Defendant's counsel indicated a preferred strategy — to deal with the Rule 26 evidence at trial — and cannot now claim that the introduction of the same evidence was plain error.

¶ 16. In any event, these bad acts were neither proffered nor admitted as character evidence, and their introduction could not qualify as plain error, since it was within the trial court's discretion to allow the proffered testimony as relevant context for the sexual assault. Although V.R.E. 404 prohibits the introduction of evidence showing defendant's character or "conformity" with past behavior "on a particular occasion," Rule 404(b) "allows evidence of uncharged misconduct for *any purpose* other than proving the defendant's bad character." *State v. Forbes*, 161 Vt. 327, 332, 640 A.2d 13, 16 (1993). "Our review of the trial court's admission of evidence under Rule 404(b) . . . includes two steps: first, whether the evidence was relevant and material to the cause of action, . . . and if so, whether the evidence was more probative than unfairly prejudicial." *State v. Laprade*, 2008 VT 83, ¶ 14, 184 Vt. 251, 958 A.2d 1179.

¶ 17. In cases of domestic assault, uncharged bad acts providing information about the circumstances or pattern of events surrounding an assault are relevant to provide context for the assault. In *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998), the State introduced evidence of two prior assaults against the complainant to explain "why the victim was afraid of the defendant and to prove that the defendant had the requisite intent . . . to 'threaten' the victim with the knife." This evidence was held to be proper not to expose the defendant's character but "to portray the history surrounding the abusive relationship, [and] . . . to provide the jury with an understanding of defendant's actions on the date in question." *Id.* at 62, 716 A.2d at 13. Because "[a]llegations of a single act of domestic violence, taken out of . . . situational context, are likely to seem incongruous and incredible to a jury," context evidence is relevant to explain the general tenor of defendant's relationship with the victim, and to show how

that relationship led to the assault. *Id.* (quotation omitted); see also *Laprade*, 2008 VT 83, ¶ 20 (evidence of prior assaults admissible to show context of charged aggravated domestic assault); *State v. Hendricks*, 173 Vt. 132, 139, 787 A.2d 1270, 1276 (2001) ("[T]he introduction of two prior instances of defendant's abuse of the same victim was not to show defendant's propensity to commit such abuse, but rather, to provide the jury with an understanding of defendant's actions on the date in question.") (citation and quotation omitted).

¶ 18. We have similarly admitted context evidence in cases of sexual assault. In *State v. Forbes*, 161 Vt. 327, 640 A.2d 13 (1993), the State was permitted to introduce evidence demonstrating a pattern of incest between the defendant father and his daughter in order to prove that the defendant sexually assaulted his daughter on the date in question. The point was not to demonstrate defendant's bad character, but to establish that defendant had already had sexual contact with his daughter, and had emotionally, sexually, and physically abused her. The evidence also showed that the daughter was in fear of the defendant, thus explaining the circumstances surrounding the charged sexual assault. *Id.* at 331, 640 A.2d at 15.

¶ 19. Here, the State introduced evidence indicating a pattern of physical and emotional abuse of complainant by defendant while she lived with him and his wife. The evidence explains the circumstances surrounding what could otherwise seem an inexplicable, and so unlikely, sexual assault of one housemate by another. See *Laprade*, 2008 VT 83, ¶ 22 (explaining that context evidence is admissible to provide background for what might otherwise seem to be an "incongruous" encounter between a victim and defendant). The bank teller's testimony describing the manner in which defendant cashed Nancy's Social Security checks supplements this picture of intimidation, as does the neighbor's testimony that Nancy furtively tried to obtain magazines and stamps from her and to make phone calls from her home. As was the case in *Forbes* and *Sanders*, evidence tending to show this pattern of oppression and abuse is probative to explain the context of the relationship between defendant and Nancy, to demonstrate the fear and oppression under which she lived, and to help the jury understand the circumstances surrounding the sexual assault.

¶ 20. Defendant argues that the prior incidents of assault admissible in *Forbes* and *Sanders* involved acts similar to the

charged crime, whereas here the evidence encompasses a wider range of behavior not analogous to the act of sexual assault. In this case, however, the fact that defendant's history with Nancy reflected physical and emotional abuse, rather than sexual abuse, is not dispositive. If believed, testimony about the ongoing physical and emotional oppression of Nancy by defendant was still probative to explain an act of criminal domination. Defendant also contends that acts which occurred after the sexual assault are not relevant.[1] That some of these abuses occurred prior to the assault, while others may have taken place afterward, does not lessen their probative value as context evidence. All of these events demonstrate that defendant often belittled and controlled complainant, and this context evidence sheds light on why defendant would engage in a consummately demeaning and controlling sexual assault against his housemate. See *Sanders*, 168 Vt. at 62, 716 A.2d at 13. Therefore, it was not plain error for the court to admit this evidence.[2]

¶ 21. Nor is the probative importance of this context evidence "substantially outweighed by the danger of unfair prejudice," such that the evidence would be inadmissible under V.R.E. 403. Evidence "tending to inculpate the defendant always carries with it some prejudice," *State v. Kelley*, 163 Vt. 325, 329, 664 A.2d 708, 711 (1995), as otherwise the prosecution would have no interest in its introduction. Rule 403 excludes only "unfairly" prejudicial evidence, described as evidence having the "primary purpose or effect . . . [of] provok[ing] horror or punish[ing] the defendant, or . . . appeal[ing] to the jury's sympathies." *Id.* No such risk appeared here, where context evidence in the form of insult and bullying may have cast defendant in a negative light,

---

[1] The time frame of the physical and emotional abuse suffered by Nancy is unclear from the testimony at trial. Nancy testified that the assault happened a few months before she moved out of defendant's home in November 2005, but there was no specific testimony about when any of the other instances of abuse occurred. At the pretrial conference on February 27, 2007, the State indicated that defendant kicked Nancy in the buttocks after the sexual assault.

[2] We reject defendant's claim that this case is similar to *State v. McCarthy*, 156 Vt. 148, 589 A.2d 869 (1991), where we found plain error after defendant was convicted of lewd/lascivious conduct with a child. In *McCarthy*, the State cross-examined witnesses regarding a prior assault by the defendant on another family member to demonstrate that the defendant had a propensity to assault his children. Such character evidence should have been excluded under V.R.E. 404(b), and we found plain error when the trial court failed to do so. *Id.* at 158, 589 A.2d at 875.

but was not horrific, and defendant offers no cogent reason why a properly instructed jury would unanimously vent such displeasure, or assuage whatever sympathy it might have for complainant, by convicting defendant of assault in the absence of evidence of guilt beyond a reasonable doubt. Thus, even assuming prejudice, defendant fails to show that the influence on the verdict was unduly unfair. *Laprade*, 2008 VT 83, ¶ 23 (reiterating that "[w]hen the admission of prejudicial evidence is claimed to be plain error, [defendant] must show that the judgment below was substantially affected by its admission.").

 ¶ 22. Defendant further asserts that the trial court committed plain error by failing to exclude from the context evidence defendant's supposed kicking of the complainant, since defendant was facing charges on the same complaint and could not fairly respond without a grant of immunity. We confronted a similar situation in *State v. Sharrow*, when the trial court failed to grant the defendant immunity for his testimony concerning a prior bad act that was the subject of a domestic assault charge still pending at the time of trial. 2008 VT 24, 183 Vt. 306, 949 A.2d 428. We rejected the defendant's plain-error claim because the defendant had "not attempted to show how the outcome of his trial would have differed had he testified with immunity." *Id.* ¶ 27. We similarly reject defendant's claim of error here, for he has failed to demonstrate how or why his hypothetical testimony regarding the kicking would likely have changed the result of his trial.

## II.

¶ 23. Defendant next claims that the trial court erroneously admitted hearsay testimony from both complainant and defendant's neighbor. Specifically, defendant now objects to the neighbor's testimony about statements made by Nancy when she stopped by neighbor's home, including requests that neighbor get her some magazines and stamps on "the QT," that she use neighbor's phone, and that she be able to receive mail at neighbor's home. Defendant also contests the admission of Nancy's statement that defendant's wife told her to stay in her room until she recanted her disclosure that defendant sexually assaulted her. Because defendant did not object to the introduction of this evidence below, we review for plain error only. See V.R.E. 103(a)(2).

¶ 24. Although hearsay is generally not admissible at trial, see V.R.E. 802, none of these statements were inadmissible hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" V.R.E. 801(c) (emphasis added). Neither complainant's nor the neighbor's statements were offered to prove "the truth of the matter asserted." Although the testimony was offered to prove that complainant made certain inquiries, the content of the statements was not offered to prove the truth of her request. Nancy's inquiries to the neighbor about getting magazines and stamps on "the QT" were presented as questions, without declarations by Nancy that the facts asserted therein were true. The neighbor's testimony that Nancy nervously said she had to leave after speaking to the neighbor was not necessarily evidence that she actually had to go, but showed her state of mind while living with defendant and his wife. This testimony also suggested that Nancy sought to hide various aspects of her communication from them.[3] In any event, the latter statement would fall within the so-called "state of mind" exception to the hearsay exclusion. See V.R.E. 803(3) (allowing testimony about an out-of-court "statement of the declarant's then-existing state of mind, [or] emotion"). Nor was Nancy's testimony about the wife's command offered to prove the truth of the matter asserted. The fact in issue was what the wife commanded: "stay in the room until you recant," an imperative statement devoid of truth or falsehood — it was simply an order. See *State v. Purnell*, 792 S.W.2d 635, 638 (Mo. Ct. App. 1989) (stating that an imperative statement does not have quality of truth or falsehood). Such a command could not be admitted to prove "the truth of the matter asserted," and so was not hearsay. V.R.E. 801. Admission of these statements was no error at all.

*Affirmed.*

---

[3] Even if the admission of the neighbor's statements was error, the minimal probative value of the neighbor's testimony meant that admission of the statements could not rise to the level of plain error. See *Bubar*, 146 Vt. at 401, 505 A.2d at 1199 (evidence that played only a "secondary role" in the State's case could not be the basis for plain error).