2011 VT 15

# State of Vermont v. Richard D. Memoli

[18 A.3d 567]

No. 09-349

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed February 10, 2011

238

*William H. Sorrell*, Attorney General, and *David E. Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Richard D. Memoli appeals from a judgment of conviction based on a jury verdict of aggravated sexual assault. He contends the trial court erred in: (1) excluding evidence of complainant's use of cocaine during the months preceding and following the assault because it precluded him from presenting his defense that complainant voluntarily exchanged sex for drugs; and (2) declining to instruct the jury on the prohibited act of lewdness as a lesser-included offense. We conclude that the

court's pretrial order excluding evidence of complainant's drug use was error, and reverse and remand for a new trial.

¶ 2. The record evidence may be summarized as follows. On the evening of December 31, 2007, complainant celebrated New Year's Eve with friends at a bar in Winooski. After consuming several drinks which left her feeling "buzzed," complainant caught a ride to a nearby house party. Complainant smoked marijuana on the ride to the party and drank — by her own estimation — "a lot" of beer while there. Shortly after midnight, complainant left the party with the two friends who brought her, planning to go home. An argument ensued, however, over whether the complainant was owed change from a purchase of marijuana, and the friends dropped her off on Malletts Bay Avenue.

¶ 3. As complainant began to walk home, a sport utility vehicle pulled up and stopped in front of her. Complainant's version of the ensuing events is as follows. She recalled that the driver asked if she was okay, and identified himself as "Rico" and the woman in the passenger seat as "Sam." Complainant gave a false name because she "thought they were undercover cops." Rico, later identified as defendant, offered complainant a ride home. She accepted and entered the rear passenger seat. Complainant also accepted defendant's invitation to join him and Sam at defendant's house for drinks. After parking in defendant's driveway, defendant asked Sam to open the console and she removed what, according to complainant, "looked like a bag of crack." Sam brought the bag inside the house, where she and defendant entered a bedroom and closed the door while complainant drank a beer in the living room. Complainant assumed that defendant and Sam were smoking the crack cocaine.

¶ 4. A few minutes later, Sam and defendant came out and invited complainant to enter the bedroom to be "more comfortable." She complied, whereupon Sam closed and locked the bedroom door. Complainant testified that she then observed defendant and Sam smoking crack from an inhaler, and that Sam also blew some of the smoke into her mouth. Complainant further testified that "at some point" her clothes were off but could not recall precisely when or how that occurred. Complainant testified that over the next several hours she was forced to participate in a number of sexual activities, including oral sex on defendant. Complainant testified that she was crying, asked to leave, and felt sick and scared throughout much of the ordeal. Eventually

defendant told her that she could leave, called her a taxi and told her to be "a good girl and not cry in the cab."

¶ 5. Complainant arrived home shortly after 6:00 a.m., and later that morning called her best friend to report the incident. Complainant also told her mother, who called the police. The investigating officer who arrived at the home observed complainant lying on the bed in a fetal position, crying and hyperventilating. Complainant was brought to the hospital, where she was met by an officer with the Chittenden County Special Investigations Unit. The officer observed complainant to be distraught and unwilling to make a statement at that time. A medical examination revealed redness and a bruise on complainant's neck, but no other evidence of assault. About a week later, complainant gave a lengthy statement to the investigating officer describing what happened and who was involved. Her statement and other evidence led to the arrest of defendant, who was charged with aggravated sexual assault in violation of 13 V.S.A. § 3253(a)(2) (defining aggravated sexual assault as a sexual assault committed while being "joined or assisted by one or more persons in physically restraining, assaulting or sexually assaulting the victim").

¶ 6. Defendant and his companion Sam testified and presented a different version of events. Defendant recalled that when complainant entered the car he asked her "if she smoked" and wanted to "hang out with us and get high," she assented, and all three smoked crack cocaine on the ride to defendant's house. Defendant further testified that the three then went straight to the bedroom, where they all smoked a considerable amount of crack cocaine and engaged in consensual sexual relations. Defendant emphatically denied that complainant was forced to smoke or to have sex. He recalled that complainant asked to take some crack with her when she left, and that when he refused, she "wasn't pleased." Defendant's companion testified similarly that complainant voluntarily smoked "a lot" of cocaine, and denied that complainant was forced to do so or compelled to participate in sexual relations.

¶ 7. A jury found defendant guilty as charged. He was sentenced to a term of imprisonment of ten to twelve years. This appeal followed.

## I.

¶ 8. Defendant's principal claim on appeal concerns a pretrial ruling excluding all evidence relating to complainant's use of drugs before and after the date of the offense. The ruling arose following the State's in limine motion, which contained no legal argument, but simply asked for exclusion of certain evidence including testimony about complainant's drug use before and after the date of the alleged offense, and a videotaped conversation wherein complainant allegedly buys drugs. Defendant opposed the motion through a written memorandum. At a hearing on the motion, defendant's attorney gave the following proffer of the evidence's relevancy:

> [These two issues] go to the heart of our defense. If we're not allowed to deal with [these issues], we don't have a defense. Our defense is very simple. Our defense is that the complaining witness traded sex for drugs. It's as simple as that, and it's a common occurrence among a certain group of individuals who are addicted to crack cocaine. It's just a fact of life, and so we have a voluntary defense. Our defense is that she voluntarily consented, and the reason that she did was . . . that she was a crack addict, and my client was in a position to give her all the crack that she wanted.

Defendant's attorney explained that he had witnesses who would testify that complainant used and sold crack cocaine within thirty days before and after the incident, and this was both relevant to his defense and to impeach complainant, who in her deposition denied using crack before or after the incident. Defendant's attorney further explained that "if the court restricts everything to just that day, then the jury isn't really going to understand who this person is and the kind of activities that she engages in on a regular basis. Someone who uses crack, you know, shortly before and after and then denies using it on that particular day, I think the jury should be able to hear that."

¶ 9. The State claimed that the evidence should be excluded for lack of relevance because "[t]he fact that she is a crack addict does not mean he has a right to sexually assault her." On the issue of impeachment, the State explained that complainant would testify at trial that she "has been an addict in the past," and so there would be no need to impeach her testimony.

¶ 10. From the bench, the court ruled that complainant's drug use on the night of the incident was admissible, but complainant's subsequent use and "history and reputation as a drug user beforehand is out of bounds." Defendant's attorney again probed whether he could use complainant's drug use to impeach complainant's statement during her deposition that she had not used crack cocaine before or after the night of the incident. The court denied the request, stating that those questions were not directly relevant to the charge and therefore beyond the scope of admissible testimony.

¶ 11. The court also issued a written order, directing that, other than evidence from the night of the incident, evidence of complainant's drug usage was inadmissible because it was not relevant to the issue of consent. In addition, although it had not been argued, the court rested its decision on the rape shield law, which prohibits introduction of a victim's prior sexual conduct, with some limited exceptions. 13 V.S.A. § 3255(a)(3). The court reasoned as follows:

> In this case, the defense seeks to introduce evidence of [complainant's] prior and subsequent use of crack and/or addiction to crack to support an inference that she performed sex for drugs. Allegations concerning prior sexual conduct are generally impermissible under the Rape Shield law, and none of the exceptions to that statute apply. Even if [complainant] previously used or was addicted to crack, that does not mean she consented to sex in the charged incident.

Defendant filed a motion for interlocutory appeal, which was denied.

¶ 12. The case proceeded to trial. As set forth above, complainant, defendant and defendant's alleged accomplice, Sam, all testified. While their stories varied in the details, all agreed that complainant voluntarily got into defendant's car, went back to defendant's house, and entered defendant's bedroom. They also agreed that defendant, Sam and complainant smoked crack cocaine and that complainant performed oral sex on defendant. The major points of disagreement were whether complainant took hits of crack cocaine voluntarily, how much she smoked, and whether she consented to the sexual acts with defendant and Sam.

¶ 13. Thus, in large part, the case came down to a credibility contest between defendant and complainant. In opening state-

ments, defendant's attorney outlined the defense as one of consent, claiming that complainant voluntarily took hits of cocaine and participated in sexual acts. Defendant testified that complainant took around twenty-five hits of crack cocaine voluntarily and was upset when defendant did not give her some crack cocaine to take home. Defendant also testified that complainant willingly participated in sexual acts with Sam and him. Complainant testified that she was forced to take hits of crack cocaine and that the drug use made her feel nauseous. Although the State had proffered that complainant would testify she had been "an addict in the past," this evidence was precluded by the court's pretrial order and did not come in at trial. On cross-examination, defendant's attorney questioned complainant on the inconsistency between her trial testimony that she was forced to take hits of cocaine and her original statement to police that she had taken the first hit of crack cocaine voluntarily.

¶ 14. In closing, the prosecutor encouraged the jury to judge the credibility of the witnesses by examining each person's motive to lie. The prosecutor stated: "Why would [complainant], or anyone, consent to the type of sexual acts that have been described here in this courtroom?" In rebuttal, the prosecutor again emphasized this point, noting that although defendant alleged complainant had participated voluntarily, he did not provide a reason for why complainant would lie about the sexual assault. The prosecutor claimed: "There is no reason for her lying about the sexual assault. No one can come up with a reason."

¶ 15. Defendant argues that the court's pretrial order was error because it precluded him from presenting his defense. The dissent concludes that defendant waived any objection to the pretrial order because he did not actually raise a sex-in-exchange-for-drugs defense at trial. How could he? The court's pretrial order specifically forbade defendant from eliciting any testimony regarding the complainant's "prior and subsequent use of crack and/or addiction to crack to support an inference that she performed sex for drugs." The dissent claims that "ample evidence adduced at trial supported such a defense, had defendant only chosen to raise it." *Post*, ¶ 35. Of course, to find such evidence the dissent has retrospectively combed the testimony for anything that tends to support the consent-in-exchange-for-drugs theory. Defendant did not, however, have this luxury and was required to choose a defense strategy prior to trial, in light of the court's broad

pretrial order. It is wholly inconsistent to on the one hand require defense attorneys to abide by broad pretrial orders or risk sanctions,[1] and on the other hand punish defendant for not raising a defense that was wholly dependant on the evidence that was excluded.

¶ 16. Defendant's choice of defense was not a "tactical" decision. *Post*, ¶ 39. This was not a classic waiver case where a defendant chooses a particular trial strategy to avoid the possible introduction of inculpatory evidence and thus waives any objection to an undecided evidentiary ruling. Our most analogous prior case, *State v. Koveos*, is instructive on this point. 169 Vt. 62, 732 A.2d 722 (1999). The defendant in *Koveos* was charged with lewd or lascivious conduct with a child and sought a pretrial ruling to prohibit the State from admitting a prior allegation of sexual assault against the defendant. The court granted the motion, provided that the defendant did not claim that any unlawful touching was unintentional. *Id.* at 70, 732 A.2d at 728. At trial, the court reiterated that if the defendant elicited testimony about his lack of intent, the prior bad act would be admissible to demonstrate the defendant's state of mind. The defendant chose not to bring a lack-of-intent defense, and the evidence was not admitted. On appeal, the defendant argued that "the court made an evidentiary ruling that improperly prevented him from presenting a full defense." *Id.* at 70, 732 A.2d at 727. Noting that the challenged pretrial order specifically stated that it could be revisited at trial and in fact the judge invited further discussion of the ruling, we concluded that defendant had failed to preserve the issue for review because there was "no offer of proof and no ruling on specific evidence." *Id.* at 71, 732 A.2d at 728. Thus, we held that the defendant had chosen his own strategic path and this "amount[ed] to a waiver of objections based on what might have occurred had he chosen the alternative." *Id.*

---

[1] Recently, we have affirmed severe sanctions against attorneys for disobeying broad pretrial evidentiary rulings by asking questions intending to elicit a response about the excluded evidence. See *In re Pannu*, 2010 VT 58, ¶¶ 17-18, 188 Vt. 279, 5 A.3d 918 (affirming trial court's order finding defense counsel in criminal contempt for willfully violating a pretrial order); *Turner v. Roman Catholic Diocese of Burlington*, 2009 VT 101, ¶¶ 19-20, 186 Vt. 396, 987 A.2d 960 (affirming trial court's decision to grant a mistrial and monetary sanctions to plaintiff after defense counsel violated a pretrial evidentiary ruling).

■ ¶ 17. In stark contrast to *Koveos*, defendant in this case was faced with a pretrial ruling that specifically forbade him from eliciting evidence about complainant's prior and apparently ongoing drug use to support defendant's theory of the case. Defendant's decision not to rely on a drugs-for-sex theory was not to *avoid* admission of his own bad act, as in *Koveos*, but to *abide* by the court's unequivocal pretrial ruling excluding evidence of complainant's drug usage. It was not a tactical decision, but a compelled one. Further, there was no invitation from the court that the matter could be revisited at trial, and when the matter almost surfaced during cross-examination of complainant, the court reiterated its ruling that complainant's drug use before and after the incident was inadmissible. Defendant did not waive his defense, and is entitled to review of the court's order.

¶ 18. Therefore, we turn to the merits of the court's pretrial order. The trial court cited two grounds for its decision to exclude evidence of complainant's prior and subsequent drug use: the rape shield statute and lack of relevancy to the issue of consent. Neither provides a legal basis for exclusion of defendant's proffered evidence.

■ ¶ 19. To begin, the court's reliance on the rape shield law, 13 V.S.A. § 3255, was misplaced. By its terms, this law precludes admission of "[e]vidence of prior sexual conduct of the complaining witness." *Id.* § 3255(a)(3). The law serves an important function and was enacted "to protect victims from an inquisition into their past sexual conduct, and to treat past conduct evidence uniformly, whether in rape cases or in the law generally." *State v. Patnaude*, 140 Vt. 361, 376-77, 438 A.2d 402, 409 (1981). We have said that it is critical to prevent admission of a victim's prior sexual conduct because this evidence "presents great potential danger" of influencing the jury, whose members may not agree with a victim's moral values. *Id.* at 376, 438 A.2d at 408. In addition, prior sexual conduct is generally not relevant because "[c]onsent to sexual conduct with one person has no tendency to prove consent to conduct with another." *Id.* at 378, 438 A.2d at 410.

■ ¶ 20. In this case, however, the statute is simply not applicable because defendant did not seek to introduce evidence of complainant's "prior sexual conduct." 13 V.S.A. § 3255(a)(3). Defendant requested to admit evidence of complainant's crack cocaine use, both before and after the incident to demonstrate

complainant's affection for the drug. Only then could he argue his defense — that her desire for cocaine was strong enough to motivate her to consent to sexual interactions with him in exchange for the drug. Defendant was not acquainted with complainant prior to that night, had no knowledge of her prior sexual behavior, and did not seek to admit any evidence of her prior sexual encounters.

¶ 21. Cases from other jurisdictions address the issue of whether evidence of a rape victim's past activity of selling drugs in exchange for sex can be admitted under the rules of evidence and under rape shield laws. See, e.g., *Shand v. State*, 672 A.2d 630, 635-36 (Md. 1996) (excluding defendant's proffered evidence of unaccepted and unconsummated verbal offer to trade sex for drugs as prior "sexual conduct"); *Johnson v. State*, 632 A.2d 152, 161 (Md. 1993) (holding that trial court erred in excluding evidence that victim had exchanged sex for drugs within a week of the alleged rape because it was central to defendant's defense, highly probative to prove that defense, and unlikely to be misused by the jury); *State v. Pirela*, 2003 UT App 39, ¶¶ 15-18, 65 P.3d 307 (affirming trial court's exclusion of testimony about "victim's reputation as a prostitute and her behavior during sex-for-drugs transactions"). These cases raise a much more complex question than the one presented by this case. Defendant did not request to admit evidence that complainant had, in the past, exchanged sexual favors for drugs. Rather, defendant sought to introduce evidence of complainant's usage to demonstrate complainant's motive for consenting to sexual acts with a virtual stranger and to rebut complainant's testimony that she did not voluntarily inhale crack cocaine.

¶ 22. Under the plain language of the statute, defendant's request to admit evidence of complainant's drug use should not have been excluded. Complainant's prior addiction to crack cocaine and her use of the drug was not "prior sexual conduct," 13 V.S.A. § 3255(a)(3), and thus outside the statute's evidentiary exclusion. There is no logical reason why this evidence was inadmissible under the policy of the rape shield law, and the court erred in so holding.[2]

---

[2] This ruling should not be taken to condone admission of evidence related to complainant's past sexual history on retrial.

■ ¶ 23. The court's second rationale for exclusion of the evidence — that complainant's drug use, other than on the night of the incident, was not relevant — is also erroneous. Evidence is relevant if it has a tendency to make the existence of a fact in issue more or less probable than without the evidence. V.R.E. 401; see *State v. Raymond*, 148 Vt. 617, 622, 538 A.2d 164, 167 (1987) (explaining that relevant evidence has some probative value). The trial court has broad discretion in determining the relevance of evidence; however, "this discretion is limited in criminal cases by defendant's constitutional due process rights and right to confront witnesses against him." *State v. LeClaire*, 2003 VT 4, ¶ 13, 175 Vt. 52, 819 A.2d 719.

■ ■ ¶ 24. The court's decision was erroneous because complainant's drug use within thirty days before and after the charged incident was relevant to the defense that she consented to sexual acts with defendant to obtain crack cocaine. See *In re A.B.*, 170 Vt. 535, 536-37, 740 A.2d 367, 369-70 (1999) (mem.). In sexual assault cases where the case hinges on the credibility of the complainant, "the presence of an ulterior motive for the victim's making the accusations is often a critical issue." *Id.* at 537, 740 A.2d at 369 (quotation omitted); *State v. Cartee*, 161 Vt. 73, 77, 632 A.2d 1108, 1111 (1993) (holding that it was error for trial court to exclude evidence of complainant's motive where case turns on complainant's credibility). Thus, proffered evidence relating to a defense theory of consent is relevant. See *In re A.B.*, 170 Vt. at 536-37, 740 A.2d at 369.

¶ 25. The importance of this evidence is highlighted by the State's presentation of its case. At trial, the State underscored that defendant had failed to provide any reason for why complainant would consent to sexual acts with defendant or why she would fabricate her allegations against defendant, reiterating for the jury that complainant found defendant unattractive and that he was older than she was. Specifically, during closing statements, the prosecutor questioned the jury, "Why would [complainant], or anyone, consent to the type of sexual acts that have been described here in this courtroom?" Defendant's one-word answer was cocaine, but the jury never heard it. As defendant proffered at the pretrial hearing, complainant's addiction to, use of, and desire for crack cocaine was essential for defendant to demonstrate his explanation for complainant's motivation — that she

participated in sexual acts with defendant in exchange for access to the drug.

¶ 26. When the prosecution uses the lack of court-excluded evidence to create positive inferences on the complainant's credibility, it is certainly relevant for the defendant to present evidence on the issue and allow the jury to reach its own determination of credibility. In *Johnson v. Moore*, the defendant filed a petition for habeas corpus, arguing that he should have been allowed to introduce evidence of the victim's sexual history and prior drug usage after the prosecution painted the victim as sexually inexperienced and abhorrent of drugs. 472 F. Supp. 2d 1344 (M.D. Fla. 2007). The court granted the petition, explaining that the case hinged on the victim's credibility and by excluding defense evidence to challenge the victim's purported sexual inexperience and abhorrence of illicit drugs the court had created for the prosecutor "a windfall opportunity to offer . . . testimony that is damning to the defendant but that is not subject to a testimonial contest in the defense case — unchallengeable testimony, the antithesis of a fair trial." *Id.* at 1365. The court explained that "[e]vidence on a subject that is relevant and probative in the prosecution's case remains relevant and probative in the defense case." *Id.* This is exactly the situation here. Given that the prosecutor exploited the lack of evidence on motive to disprove complainant's alleged consent, it was certainly relevant for defendant to introduce his explanation of complainant's motivation — her drug usage. Therefore, we conclude that the court's conclusion that the evidence was irrelevant was error.

¶ 27. The State argues that even if relevant there was no error in exclusion of this evidence because defendant incorrectly sought to introduce complainant's prior conduct to prove that she is a drug addict, and this is a character trait which cannot be proven through specific instances of conduct. See V.R.E. 404(a) (explaining that specific instances of conduct may not be admitted to prove a character trait). The State's argument misunderstands the issue. Defendant did not seek to introduce complainant's drug use to prove that she had a specific character trait of being an addict or a reputation as a drug user to undercut her credibility. See *State v. Roy*, 151 Vt. 17, 31, 557 A.2d 884, 893 (1989) (affirming exclusion of prior specific acts to prove violent character of victim), *overruled on other grounds by State v. Brillon*, 2008 VT

35, 183 Vt. 475, 955 A.2d 1108; see also *Williams v. State*, 681 N.E.2d 195, 202 (Ind. 1997) (affirming exclusion of evidence of victim's cocaine addiction to prove a character trait of victim under Indiana Rule of Evidence 404(a)(2)). Defendant's proffer was narrower: that evidence of complainant's drug use was relevant to demonstrate that she had motive to consent to sexual acts with defendant. This purpose is consistent with the rule. See V.R.E. 404(b) (explaining that prior acts are not admissible to prove a character trait, but may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").

 ¶ 28. In addition, Rule of Evidence 403 did not bar admission of complainant's drug use. V.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). As explained above, the evidence held strong probative value because it was critical for the defense to demonstrate to the jury why complainant would consent to the described sexual acts, and why complainant would afterwards lie about her consent. The countervailing concerns of Rule 403 do not outweigh the probative value. The prejudicial effect was nonexistent. Evidence is prejudicial because it tends to inculpate defendant. See *State v. Leroux*, 2008 VT 104, ¶ 21, 184 Vt. 396, 965 A.2d 495. Because complainant's drug usage was being offered by defendant as exculpatory, rather than inculpatory, evidence, "the concern with prejudice to the defendant disappears." *People v. Turner*, 866 N.E.2d 1215, 1222 (Ill. App. Ct. 2007). As other courts have recognized, when prior-bad-act evidence of a nondefendant is offered by defendant, "the usual restrictions on other-crimes evidence [that] exist to prevent prejudice to a defendant through admission of evidence of his or her other bad acts" do not apply. *Id.* at 1223; see *id.* at 1222 (citing cases); see also *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984) ("[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword."). The relevant test for admissibility under Rule 403 thus only involves consideration of the rule's other enumerated concerns, including confusion of the issues, misleading the jury and undue delay. See *State v. Kennison*, 149 Vt. 643, 651, 546 A.2d

190, 195 (1987) (concluding that defendant's proffered prior bad act evidence of a witness to establish motive was inadmissible because it would mislead the jury); *Raymond*, 148 Vt. at 620, 538 A.2d at 166.

¶ 29. Here, there was little danger of confusing the issues or misleading the jury. Complainant's drug use was not, as the State argues, a collateral issue that was being used only to impeach complainant's character. Cf. *State v. Berard*, 132 Vt. 138, 150-51, 315 A.2d 501, 510 (1974) (explaining that witness's use of narcotics was properly excluded because there was no evidence that witness used narcotics during relevant time period). Rather than raising a peripheral issue, evidence of complainant's drug use was directly related to whether complainant voluntarily inhaled drugs and consented to sexual acts, both of which were the prominent disputes at trial. Defendant was entitled to introduce this evidence to support his theory of the case.

¶ 30. Further, complainant's drug use was relevant for purposes of impeaching her testimony that she did not voluntarily inhale drugs on the night of the incident and that she felt nauseous after being allegedly forced to inhale, thereby implying that she was unfamiliar with the drug. Contrary to the dissent's assertion, defendant adequately preserved this claim of error. He raised it at the pretrial hearing,[3] and when the issue was peripherally raised at trial, the court closed that avenue of questioning. During cross-examination of complainant, defendant questioned her about inconsistencies in her testimony, particularly her voluntary use of crack cocaine on the night of the incident. When complainant claimed she did not remember whether she had admitted to voluntarily inhaling crack in her first report to police, defense counsel provided her with a portion of her deposition testimony to refresh her recollection. The prosecutor immediately requested a bench conference. During the ensuing discussion, the prosecutor claimed that defense counsel was tread-

---

[3] Defendant's initial memo in opposition to the State's motion in limine specifically argued that evidence of complainant's crack cocaine use was "relevant for impeachment purposes." The issue was also raised at the pretrial hearing, and the trial court rejected the argument. See *supra*, ¶¶ 8-11. This, in itself, was adequate to preserve the issue for appeal. Under Rule of Evidence 103(a)(2), when the court makes a "definitive ruling" excluding evidence before trial, "a party need not renew an objection or offer of proof to preserve a claim of error for appeal."

ing into territory forbidden by the court's pretrial ruling because the portion of the deposition which defense counsel asked complainant to read referred to complainant's prior drug use. The following exchange took place:

[Prosecutor]: He's going into the past, in the past here.

[Defense Counsel]: Absolutely not.

. . . .

[Prosecutor]: At page 28 [of the deposition], and you — this is — she says, "And that's something you've done before one other time, two other times." That's exactly what he's going into.

. . . .

The Court: What else is on those?

[Prosecutor]: "And did you inhale it?" "I think I just kind of held it in. I mean, I guess." "So it went into your lungs?" "Yeah." "And that's something you've done before?"

[Defense Counsel]: That's all I'm going to ask her. Why would I ask her about something you told me I can't?

The court again restricted questioning solely to "the night in question."

■ ¶ 31. Such exclusion was error. Defendants have a right to cross-examine witnesses on evidence that "limits, explains, or refutes direct examination or modifies the inferences to be drawn therefrom." *Berard*, 132 Vt. at 147, 315 A.2d at 508. As noted, the State's pretrial proffer that complainant would testify that she had been an addict in the past was excluded by the court's broad pretrial order. It was up to the jury to decide whether complainant's or defendant's explanation of the events that night was more credible, but defendant was entitled to provide the jury with a full picture of complainant's motivations and present the necessary evidence to support his theory. Therefore, it was error to exclude evidence of complainant's drug usage and defendant is entitled to a new trial.

II.

¶ 32. Because it may arise again on remand, we also consider defendant's second argument that the trial court erred in declining to instruct the jury on the prohibited act of "[e]ngag-[ing] in . . . lewdness" under 13 V.S.A. § 2632(a)(8) as a lesser-included offense of the aggravated sexual assault charge brought under 13 V.S.A. § 3253(a)(2). We have held that "[a] lesser-included-offense instruction is required when the elements of a lesser offense must necessarily be included in the greater offense." *State v. Beaudoin*, 2008 VT 133, ¶ 31, 185 Vt. 164, 970 A.2d 39. As explained in *State v. Forbes*, "[a]n offense is a lesser-included offense of another if it is composed of some, but not all, elements of the greater offense and does not have any element not included in the greater offense." 147 Vt. 612, 616-17, 523 A.2d 1232, 1235 (1987).

¶ 33. "Lewdness" under § 2632(a)(8) is specifically defined by 13 V.S.A. § 2631(2) as "open and gross lewdness" which — by its appearance in the chapter dealing with such other offenses as prostitution, assignation, and sex trafficking — we have construed to mean "neither disguised nor concealed." *Beaudoin*, 2008 VT 133, ¶ 37. Thus understood, *Beaudoin* held that the "open and gross" element of § 2632(a)(8) is not contained within the crime of felonious lewd or lascivious conduct with a child under 13 V.S.A. § 2602, which applies whether the acts are "done openly or secretly," *Beaudoin*, 2008 VT 133, ¶ 38, and therefore that misdemeanor lewdness under § 2632(a)(8) is not a lesser-included offense of lewd or lascivious conduct with a child. *Beaudoin*, 2008 VT 133, ¶ 39.

¶ 34. The same conclusion applies to the offense of aggravated sexual assault. Defendant asserts that the aggravated sexual assault charge at issue here contains an element of "openness" similar to § 2632(a)(8) because it requires that the actor be "joined or assisted by one or more persons," 13 V.S.A. § 3253(a)(2). The argument misconstrues the "open and gross" element of § 2632(a)(8). As we explained in *Beaudoin*, this requirement incorporates a public element for crimes offensive to "community morality," such as prostitution or solicitation, quite distinct from anything involving sexual assault, whether committed alone or

with assistance. 2008 VT 133, ¶ 37 (quotation omitted). Accordingly, there was no error.

*Reversed and remanded for a new trial.*

¶ 35. **Reiber, C.J.,** dissenting. The majority reverses an aggravated sexual assault conviction on the basis of a claim that was waived. Although defendant never raised — indeed never even mentioned — a sex-in-exchange-for-drugs defense at trial, the majority concludes that the court's pretrial ruling excluding evidence of complainant's drug use a month or so before and after the incident forced defendant "to choose a defense strategy" different from the one he planned. *Ante,* ¶ 15. With respect, the majority's reasoning is flawed. Nothing in the court's ruling prevented defendant from asserting a sex-in-exchange-for-drugs defense. Indeed, ample evidence adduced at trial supported such a defense, had defendant only chosen to raise it. He chose not to. The court's ruling, therefore, could not have prejudiced defendant and should not result in a reversal of the judgment.

¶ 36. As the majority observes, this was a credibility contest, and a vigorous one at that. The record shows that defendant cross-examined complainant intensively about her drug use on the evening in question, eliciting an admission that she had originally informed the police that her use of cocaine was voluntary, not compelled as she claimed on direct examination. Asked to explain the discrepancy with her earlier and more contemporaneous statement, complainant acknowledged that "[b]ack then it was more clear, everything was more clear." Complainant further acknowledged informing the police that she had inhaled the first hit of cocaine that evening and held it in her lungs, and later took a second hit. Complainant ultimately conceded, "I don't remember taking the hits voluntarily, but I guess I did."

¶ 37. Complainant's concession corroborated defendant's testimony that he did not force complainant to inhale cocaine and that she voluntarily consumed a considerable amount of the drug that evening. The admission was also consistent with the testimony of defendant's companion, who recalled that "it seemed like [complainant] was doing it [smoking] because she wanted to do it" and that "a lot" of crack cocaine was consumed by the parties. The record thus provided ample support for an argument that complainant not only inhaled the cocaine offered by defendant voluntarily, but was readily familiar with the drug and the drug culture;

she acknowledged having smoked and purchased marijuana on the evening in question, gave a false name to defendant because she thought he was an undercover police officer, immediately recognized the white chalky substance that defendant produced as crack, and admitted to being "wowed" by the amount.

¶ 38. What is *not* in evidence is any assertion by defendant that complainant exchanged sex for drugs. In his opening statement, defense counsel declared that the evidence would clearly show complainant consented to having sexual relations with defendant. He did not, however, assert that it would show that her consent was motivated by a desire for access to defendant's substantial supply of crack cocaine. In his cross-examination of complainant, defense counsel did not ask: Did you agree to enter defendant's car in order to obtain the drug? Did you accept a ride to defendant's apartment, enter the bedroom where you assumed that he and his companion "were smoking crack cocaine," and engage in sexual relations over an extended period of time because doing so provided a means to obtain and satisfy your craving for the drug? In his closing argument, defense counsel asserted that complainant may have been motivated to claim coercion because she "didn't want her mother to know about anything" or possibly because defendant refused her request for additional drugs. He did *not* argue, as he now emphatically claims on appeal, that crack cocaine is "a powerful motivator," that its "euphoric effects" are well known, and that complainant was therefore motivated — explicitly or implicitly — by a desire for the drug.

¶ 39. Evidence that complainant used or purchased cocaine on other occasions may have supported a sex-for-drugs defense, but it was not *essential* to such a defense. The exclusion of such evidence certainly did not prevent defendant from raising it where substantial other evidence showed that complainant was not only familiar with the drug but inhaled it that night. Nothing in the several drug studies cited by defendant suggests that frequent use of, or even addiction to, crack cocaine is necessary to stimulate a desire for "the sense of euphoria" they describe, and nothing in the court's ruling prevented defendant from so arguing based on the record evidence described above. Cf. *State v. Cartee*, 161 Vt. 73, 77, 632 A.2d 1108, 1111 (1993) (holding that trial court erred when it "allowed *no* inquiry into the possibility that complainant . . . was motivated to fabricate" allegation of sexual assault

(emphasis added)). One can only assume, therefore, that defendant's choice not to pursue the defense was a tactical one and a voluntary waiver of the issue. See *State v. Koveos*, 169 Vt. 62, 71, 732 A.2d 722, 728 (1999) ("Defendant's choice of a strategic path amounts to a waiver of objections based on what might have occurred had he chosen the alternative."). Even if erroneous, therefore, the trial court's exclusion of evidence to buttress an argument that defendant otherwise could have, but never raised, cannot be prejudicial. Accordingly, any error in the trial court's ruling must be deemed harmless. See *State v. Jackson*, 2008 VT 71, ¶ 18, 184 Vt. 173, 956 A.2d 1126 (explaining that an erroneous evidentiary ruling, even if it is of constitutional dimension, will not compel reversal if it is harmless beyond a reasonable doubt).

¶ 40. Although not separately captioned or argued as such, defendant also implies that evidence of complainant's cocaine use on other occasions should have been admissible for purposes of impeachment. Whether complainant's prior or subsequent drug use was relevant to her credibility was not presented to, or ruled on, by the trial court in limine. Furthermore, the State did not inquire into complainant's prior or subsequent drug use at trial, and she did not affirmatively deny it, although she did testify at one point that the "hit" made her feel "sick, nauseous." To the extent that this statement could have been understood by the jury to imply that complainant was a novice drug user, defendant could have moved — on the new ground of misleading testimony — to have the court amend its pretrial ruling to allow rebuttal of the implication. Defendant did not so move, however, and therefore waived any claim of error. See *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985) (stating that, because pretrial rulings are necessarily "tentative and subject to revision," new facts and circumstances that arise at trial require that defendant apprise the court of any new claim or objection).

¶ 41. The court's pretrial evidentiary ruling did not prejudice defendant at trial, thus obviating the need to reach the merits addressed by the majority. Accordingly, I would affirm the judgment.

¶ 42. I am authorized to state that Justice Burgess joins this dissent.